# CHARLESTON.

WILSON v. RESERVE GAS Co. *et al.*
and
RESERVE GAS Co. v. WILSON *et al.*

Submitted April 25, 1916.    Decided May 9, 1916.

1. MINES AND MINERALS — *Mining Lease — Separate Agreement — Construction.*

   An agreement which in terms identifies a former oil and gas lease, supplements and enlarges its provisions, recognizes the rights of the owner thereof, and binds the lessors "to accept the sum of seventy-five dollars each three months in advance thereafter from quarter to quarter in lieu of the drilling of a well or wells on said land until such time as" the lessee "shall surrender or abandon said lease," and concluding, "It is further understood that this agreement shall be null and void unless said" lessee "shall elect to pay and does pay on and after the 24th day of August, 1909, said quarterly sum in advance, or shall elect to drill and does drill a well on said land, and further that this agreement shall not be construed to require said" lessee "to drill any well or wells on said land but that it permits said" lessee "during the term for which said payments are made to drill or not to drill as it may elect", will be read with the lease it supplements, and both construed as component parts of one contract; and if, when so read and construed, their provisions are inconsistent, those of the later one will control.   (332).

2. SAME—*Perpetuities—Mining Lease—Tenancy at Will.*

   Nor do the two agreements combined create a tenancy at will determinable at the option of the lessor, or violate the rule against perpetuities.   (p. 333).

3. SAME—*Mining Lease—Construction.*

   The lessors may require development after the end of any quarter for which the lessee has paid the agreed consideration for delay, upon reasonable notice to the lessee; and in the event of his failure to drill within a reasonable time after such notice, equity will cancel the contracts upon the lessor's application for such relief.   (p. 335).

Appeal from Circuit Court, Lewis County.

Suits in equity by J. W. Wilson against the Reserve Gas Company and others and by the Reserve Gas Company against J. W. Wilson and others. From the decree in each case, J. W. Wilson appeals.                *Affirmed.*

*Andrew Edmiston* and *Robert L. Bland,* for appellant.

*A. B. Fleming, Charles Powell, Kemble White* and *Brannon & Stathers,* for appellees.

LYNCH, JUDGE:

The decree entered in these two causes, consolidated and heard as one, determined the rights of two contesting lessees of the same land under leases made by the same lessors, who are defendants in each case. Wilson brought the first suit against the Reserve Gas Company and others; the gas company brought the second suit against Wilson and others. The decree cancelled the oil and gas lease made to Wilson by Crittenden White and wife February 26, 1914, as a cloud on the oil and gas rights and estates of the Reserve Gas Company granted to it by the same lessors on the same land November 24, 1903. The tract contains 142 acres, situated in Lewis county. Both leases, so far as important, are in form and character similar to those generally used in that territory. The duration of the gas company lease was five years from July 20, 1904, and as much longer as either oil or gas was produced. For it the company paid one dollar, and agreed to deliver in pipe-lines to the credit of the lessors, free of cost, one-eighth part of all the oil produced and saved, and to pay $75 quarterly in advance for the gas taken and marketed by it, and to complete a well within three months from the date of the agreement or pay $35.50 quarterly in advance for each three months such completion was delayed beyond the date fixed therefor. To the lessee was conceded the right to surrender the lease for cancellation upon payment of a stipulated cash consideration, and thereby absolve itself from further liability by virtue of the contract. With these various provisions, except drilling, the gas company complied, and the lessors accepted such compliance until March 16, 1909.

On that day the Whites and the Reserve Gas Company entered into a second contract, by counsel denominated "an agreement in lieu of drilling." It briefly summarized the provisions and requirements of the lease. In lieu of the quarterly advance payment provided for the delayed completion of a well, after the expiration of the lease term, the lessee agreed

to pay and the lessors to accept seventy-five dollars for each subsequent quarterly period in lieu of the completion of a well ''until such time as said gas company, its successors or assigns shall surrender or abandon said lease''; that being the sum agreed on in the lease as compensation for the gas produced and marketed from a producing gas well. The concluding paragraph of this agreement is: ''It is further understood and agreed that this agreement shall be null and void unless said gas company shall elect to pay and does pay on and after the 24th day of August, 1909, said quarterly sum in advance, or shall elect to drill and does drill a well on said land; and, further, that this agreement shall not be construed to require said gas company to drill any well or wells on said land, but that it permits said gas company during the term for which said payments are made to drill or not to drill as it may elect.''

These sums were paid promptly by the lessee and accepted by the lessors without protest or complaint: the $35.50 until August 24, 1909, and the $75 thereafter except for the quarter ending May 24, 1914. The amount due for that quarter the lessee deposited in bank to the joint credit of the lessors, as authorized by the original lease. This payment they declined to accept. They have not accepted it or drawn it from the bank. Their refusal to do so they predicate upon a notice served on the lessee January 14, 1914, advising it of an intention on their part to declare and that thereby they did ''declare their purpose to forfeit and annul the extension agreement aforesaid, and hereby notify you, Reserve Gas Company, of their purpose to decline to receive any further rental from you under and by virtue of said extension paper, and to terminate your rights entirely thereunder with the commencement of the quarter beginning on the 24th day of February, 1914.''

Although before the service of the notice the lessee had promptly rendered to the lessors and they had accepted the agreed compensation, including that for the quarter ending February 24, 1914, in lieu of drilling, the gas company, immediately upon the service of such notice on it, located and completed on February 16th a well that daily produced gas

in large volume and at high rock pressure, in good faith believing the well to be within the boundary lines of the 142 acres. Although the machinery and appliances employed in the attempt to effect the intended object of the operations, except the derrick, were located on that track, the well itself was about fifteen feet off the boundary, on land in which the lessors did have some interest but the lessee did not have any interest or estate. The good faith of the lessee in selecting the location and in drilling the well seems not to be seriously questioned. The intention and motive of the lessee successfully can not be impugned. Readily, the contrary is perceivable. It can not be supposed that any improper purpose could or was intended to be subserved by the expenditure of $6234.47, when plainly no inducement or pecuniary benefit prompted the act. Indeed, no such sinister purpose is charged or proved.

Immediately upon the discovery of the error through its own investigation, suggested by rumors current in the community after the well was completed, the lessee made another location March 10th, conceded to be on the leased premises and thereafter diligently proceeded to drill a well thereon on the site so selected, the further progress of which the temporary injunction sought by Wilson, and awarded upon his bill March 31st, stayed and prevented. That status remains, by reason of the appeal allowed him from the decree dissolving the injunction and dismissing his bill.

Several legal propositions are urged by counsel to support the contention that the decree erroneously denied appellant the redress sought by his bill and allowed relief to the appellee. Among these, the first that demands serious consideration is the character and effect to be attributed to the two contracts entered into by the Whites and the Reserve Gas Company. This proposition may more appropriately and concisely be stated in the form of the inquiry whether these contracts are separate and distinct agreements or component parts of one agreement.

The second instrument recognizes the validity and binding force and recites the essential elements and term of the first. Both relate to the same land and the purpose to which it was

to be devoted.  The contracting parties are the same.  The reciprocal rights and duties of the original lease the second agreement preserved, except only to the extent it enlarged or modified them.  It bound the lessors to accept, in advance quarterly payments, the cash rental agreed on as compensation for the gas produced and marketed from the first well that yielded gas, until the lessee surrendered or abandoned the lease.  It excused drilling operations during any quarter for which such payment was made and accepted.  It left optional the right to drill or to refrain from drilling within such term, as the lessee might elect.  So it seems that these two instruments, coupled together as they are in all their essential features, can not properly be construed otherwise than as having all the constituent elements of one harmonious lease contract.  *Myers* v. *Carnahan*, 61 W. Va. 414.  Indeed, the notice served on the company calls the paper an extension contract, as certainly it is.  It supplements the prior contract, and, as supplemented and enlarged, both speak the result of the final negotiations between the parties thereto.

Do these instruments, when so considered and when properly construed, violate the rule against perpetuities, as counsel contend?  That they do not, reason and authority affirm; and the appellee concedes.  To similar contracts the same objections have been urged, and, upon careful examination, held unfounded.  *Oil Co.* v. *Snodgrass*, 71 W. Va. 438, and cases cited.  The lessee can not hold the leased land indefinitely without exploring the land and producing oil or gas.  There is nothing in the contract to deny the lessors the right to terminate the lease upon reasonable notice.  They have not shorn themselves of that power.  Equity will grant them relief upon equitable principles.  It will cancel for failure or refusal to develop, upon timely application after due and reasonable notice.

Then it is contended that, if not void because in character and effect perpetual, the lease, as so enlarged and modified, created a tenancy at will because if terminable at the will of the lessee in virtue of the surrender clause the lessors also may exercise the same right and privilege at their will.  This contention seems more plausible than sound.  It would operate

in repudiation of an agreement entered into for a valuable consideration by parties competent to contract upon terms, conditions and covenants fully kept and performed, the fruits of which have willingly been accepted and enjoyed without complaint or protest. Upon this proposition no prolonged discussion is deemed necessary, as it has fully been considered and determined adversely to the pretension of the appellant, not alone by our own cases but by decisions of other jurisdictions involving leases containing not the same but not radically different terms and conditions. Among these are *Guffey* v. *Lowther Oil Co.*, 52 W. Va. 88; *Friend* v. *Mallory*, 52 W. Va. 53; *Pyle* v. *Henderson*, 65 W. Va. 39; *Thaw* v. *Gaffney*, 75 W. Va. 229; *Guffey* v. *Smith*, 237 U. S. 101; *Oil Co.* v. *Snodgrass, supra; Venedocia Oil & Gas Co.* v. *Robinson*, 71 Oh. St. 302; *Brewster* v. *Zinc Co.*, 140 Fed. 801; *Oil Co.* v. *Snyder*, 106 Fed. 764. A lease different in terms only in that it limited the term to two years and contained a surrender clause was construed, in *Brown* v. *Fowler*, 65 Oh. St. 507, 63 N. E. 76, to be valid, and not void because of want of mutuality, and held not to create an estate at will. See also *Gas Co.* v. *Eckert*, 70 Oh. St. 127, 71 N. E. 281.

What, then, is the true limitation period of the lease contract, what its duration? It continues in force, by its explicit terms and conditions, without drilling on the land, provided the lessee pays and the lessors accept the compensation fixed by them in lieu of active operations and the production of oil or gas. They excused active development on the land for these products within the quarter for which such payment was made and accepted. The contract plainly so states and shows. Its language could not more definitely express the real intendment of the parties. Such is the plain purport of their solemn engagement. They were competent to bind themselves, and have done so; not irrevocably, not perpetually, but for that quarter. To that extent they have contracted definitely, precisely; and there was no suggestion or imputation of unfairness, imposition or fraud in the execution of the lease, or in the acts or conduct of the parties in respect thereof, until the notice of an intention to terminate was served on the lessee. Until that time, they construed the two contracts

as we have construed them; and that construction the author-
ities approve. *Venedocia Oil & Gas Co.* v. *Robinson, supra,*
states the principle to be: ''If a grant or lease of land for
the purpose of drilling and operating for oil and gas provides
that in case no well is completed within ninety days the grant
shall become null and void, unless the grantee shall first pay
twenty-five cents per acre per year, the lessee, after the ex-
piration of the ninety days, and until a well is drilled, be-
comes a lessee from year to year at the annual rental speci-
fied.'' The other cases cited concur in stating the same rule
or principle. Nor is there perceived any substantial or ma-
terial difference between the contracts so construed and the
one now being considered. The contract construed in *Thaw*
v. *Gaffney, supra,* was a lease of land for building purposes,
and conferred on the lessee the right to have and hold the
land during a period of five years ''or as much longer there-
after as the parties of the second part may elect to pay'' the
lessor the annual sum of fifty dollars semi-annually in ad-
vance. This instrument was held to give the lessee the op-
tion to continue to hold the land so long as he paid the stipu-
lated annual sum as therein provided, and hence not to cre-
ate a tenancy at will or to violate the rule against perpetuities.

The next inquiry relates to the attempted forfeiture or can-
cellation of the grant to the Reserve Gas Company. To avoid
lack of perspicuity and clearness, it should be remembered
that the parties agreed that payment of the amount of the
compensation in lieu of drilling conferred on the lessee the
exclusive right to determine whether it would drill or not
during any quarter for which it had paid. Of that power and
discretion the lessors could not arbitrarily deprive the lessee,
it having paid for both, and the lessors having accepted the
payment therefor. Upon what legal or equitable principle
or doctrine can be predicated a lawful claim for the termina-
tion of the lease contract within such term? The lessors could
not successfully maintain ejectment or an action of unlawful
entry and detainer. Equity would interfere to prevent or
relieve from an attempted declaration and enforcement of a
forfeiture within that period. No forfeiture could occur.
Against that occurrence the parties had amply provided. The

lessors placed it beyond their control, by the acceptance of a valuable consideration. That is what they contracted not to do or declare within any quarter for which they were paid. So it seems obvious that the last payment deferred operations on the land until February 24, 1914. The lessee could of course, if it so elected, voluntarily enter thereon, during that quarter, for such purpose. But it could not be compelled to do what the lessors agreed they would not require while it paid and they received the stipulated price for such delay. Approving the principles enunciated by the authorities cited, because apparently sound and equitable when applied to the facts proved in this case, we hold, in conformity with them, that on February 24, 1914, the parties to the lease and supplemental agreement stood in the same relative position as they did when they executed the latter agreement, and that to decree and enforce the threatened forfeiture as of the end of the quarter for which the lessee paid and the lessors accepted the agreed compensation for delay in drilling during that period, would contravene such principles, and operate unjustly and inequitably. The lessee, in our opinion, was entitled to, and should have been afforded, an opportunity to complete the well it had on March 10th undertaken to drill, if ordinarily diligent in performing the work necessary therefor. The cases uniformly hold the proper doctrine to be, as enunciated in *Venedocia Oil & Gas Co.* v. *Robinson, supra,* that "if at the end of a year", three months in this instance, "the lessor refuses to accept further payments, he thereby refuses longer to waive performance, but the lease does not *eo instanti* terminate, and the parties are left to the implied engagement to develop as they were at the time of the execution of the lease." *Consumers Gas Trust Co.* v. *Litler,* 162 Ind. 320, approved in the case of the same plaintiff against *Crystal Window Glass Co.,* 163 Ind. 190; *Harris* v. *Oil Co.,* 57 Oh. St. 118.

The lease construed in *Monarch Oil & Gas Co.* v. *Richardson,* 99 S. W. (Ky.) 668, required the lessee to begin the drilling of a well within one year, or pay thereafter an annual delay rental. The court held that, notwithstanding the right of the lessor to complain of failure to develop, he would not

be permitted to enforce a forfeiture until he had notified the lessee of his purpose to decline further payment and to demand development; and intimated, though it did not decide, because not essential to the decision, that, as the parties themselves fixed a year as the proper delay rental period, the lessor might not properly require active operations within a shorter period upon the penalty of an enforced forfeiture, on the theory that the parties had by contract determined the reasonableness of the delay period. Here that period was three months only. The lessors did give notice, early in the last quarter for which payment had been made, of their purpose to refuse payment thereafter, and to forfeit the lease if the lessee failed to drill within that quarter. But, as we have observed, they had been compensated for that period, and, for such compensation, had accorded the lessee the right to exercise its own discretion as to drilling in the meantime. Can it be punished or penalized for declining to do what the lessors had granted it the positive right to refrain from doing?. Surely, equity will not deny relief against a threatened forfeiture in such circumstances. To withhold its aid and acquiesce in the consummation of such apparent injustice would be to refuse the application of the very principles which lie at the foundation of its jurisdiction. To prevent enforcement of forfeitures was one of the incentives or inducements for the original assumption of equitable jurisdiction. While, as counsel contend, courts of equity will exercise caution in relieving against the forfeiture of oil and gas leases because of the elusive character of mineral oils and gases and for other reasons, the decisions of this court and other courts granting such relief are by no means infrequent, as the reports show.. This case affords another illustration of the necessity of the exercise of that jurisdiction. To refuse the application in this instance would, we think, be plainly wrong, not only for the reason assigned but for another reason.

Notwithstanding the futile, though *bona fide,* attempt of the lessee to drill on the 142 acres before the expiration of the last quarter for which it had paid the stipulated consideration, upon discovering the error honestly committed in locating a well outside of the 142 acres it at once undertook.

further to make and did select a location clearly within the boundaries of that tract, and was actively engaged in drilling operations thereon when the further progress of the work was enjoined at the suit of the appellant. That the well first drilled resulted from a mere error of judgment in location seems obvious. No proof shows the contrary. From a previous survey and other information obtained while on the ground, the agents of the lessee determined as best they could, in the midst of a cold snow storm, the site selected for the proposed well. Using all this information, they attempted to make the selection, as directed by the Pittsburgh office, four hundred feet each way from the boundary lines at the corner of the tract.

Crittenden White was at the well before completion of the derrick, and frequently during the drilling. If he knew, he informed no one connected with the lessee as an officer or employee that the site being drilled was not on his land, although he did know the purpose of the lessee was to drill on the 142 acres. That information the agents of the lessee imparted to him. He could not have misunderstood or misinterpreted the real intention of these operations. It is clear that White knew, before the site was selected, that the purpose thereof was to drill a well on the leased land. If he could, as he did, advise the agents of the lessee at its office in Weston, eight miles from the land, of the true boundary line at the end of the farm inquired about, he could have more definitely informed them thereof when on the ground where the location was and while the derrick was in course of construction and while the well was being drilled. This knowledge may not effectuate an estoppel. Counsel contend it does not, and the circuit court so found. But it is important as indicating a lack of good faith on the part of White, if he knew, as indeed he must have known, the well was not on his farm. Ordinary regard for the property rights of another having interests in common with him naturally would prompt the proffer of voluntary information of an error in judgment as regards a matter so vital to his pecuniary advantage and so important to one in contractual relation with him. If he did not know the exact boundary of land owned by him and on or near

which he resided as part of his patrimony, he ought not to be impatient if strangers failed to locate such boundary with exactness. These facts, but slightly if at all denied, tend to render obvious the necessity for the application of the equitable doctrine that requires relief against a declared intention to enforce a forfeiture, when the basis therefor rests in part on the action and conduct of him who will derive the substantial benefit of its declaration and enforcement, and inflict serious financial loss and damage on the party injured.

While Wilson did not have the same opportunity to know, and doubtless did not know, the well was located on the Weston Carbon Company's leased lands until about the time of its completion, he was advised of that fact fully before he entered into the lease contract with the Whites for the same land on February 26, 1914. He then owned part of the corporate stock of the Weston Carbon Company, and was its active field agent. That company's subordinate agents informed him of their belief that the well then or about to be completed was located on lands leased by it. He knew it was there only as the result of a mistake as to the true location of the boundary lines of the farm. Ten days after the completion of the well, with full knowledge of the error in location, he procured the lease concelled, and contracted to indemnify the Whites against liability for three fourths of the costs and expenses of any litigation instituted by the Reserve Gas Company or himself affecting the lease contracts, and covenanted to institute and prosecute such proceedings as he deemed necessary to uphold his lease and cancel the rival lease of the gas company, pending which the Whites excused drilling operations on the 142 acres.

In view of these circumstances, we are of opinion the decree of which complaint is made is free from error; and our order will affirm it.

*Affirmed.*