# CHARLESTON.

JOHNSON et al. v. ARMSTRONG et al.

PENTRESS GAS CO. v. MONONGAHELA NATURAL GAS CO. et al.

Submitted November 6, 1917.    Decided November 20, 1917.

1. MINES AND MINERALS—*Perpetuities—Oil and Gas Lease—Construction—Validity.*

Where an owner grants the oil and gas in land and the right to enter thereon to mine and market these minerals, with the provision that in case no well is drilled within three months the lease shall become null and void, unless the lessee thereafter pays quarterly in advance a specified sum as compensation in lieu of drilling within the succeeding quarter, and for the use of gas produced and marketed from any well drilled, and reserves one-eighth of the oil as royalty, the instrument does not constitute a grant of the oil and gas in place, but creates a modified form of lease or license to produce and market the minerals for the joint benefit of the parties thereto, agreeably with the terms, covenants and conditions of the contract. Nor is such lease void as creating a perpetuity. (p. 404).

2. SAME—*Oil and Gas Lease—Necessity of Drilling.*

Payment of the stipulated advance quarterly sums by the lessee, and acceptance thereof by the lessor without protest or complaint, and without a demand to drill within a reasonable time after the termination of a quarter for which the payments were made and accepted, operates as a waiver of the covenant to drill within such quarter. (p. 404).

3. SAME—*Oil and Gas Lease—Covenant.*

If the lessor desires to enforce the covenant to drill, he must first demand performance thereof; and if within a reasonable time thereafter the lessee fails or refuses to perform, equity will, at the suit of the lessor, grant relief by cancellation. (p. 404).

4. SAME—*Oil and Gas Lease—Forfeiture.*

But after accepting the quarterly advance payments during a period of sixteen years, without such protest or demand and notice thereof to the lessee, the lessor can not, at the end of the last quarter for which he accepted compensation in lieu of drilling, declare an immediate termination and forfeiture of the lease contract because of delay in performing the covenant to drill. (p. 405).

5. SAME.

   Declaration of the forfeiture for such cause, so made, will ex-
   cuse the failure of the lessee (who continues to tender the stipu-
   lated compensation) thereafter to exercise the right to enter and
   drill while the lessor evinces an intention to treat the lease as
   forfeited. (p. 405).

6. SAME.

   A case in which these principles are applied, the decrees grant-
   ing relief by cancellation reversed, the injunctions thereby per-
   petuated dissolved, and the bills dismissed for want of equity.
   (p. 405).

Appeal from Circuit Court, Monongalia County.

Suit by S. J. Johnson and others against G. B. Arm-
strong and others, together with suit by the Pentress Gas
Company against the Monongahela Natural Gas Company
and others. From decrees for complainants, the Monongahela
Natural Gas Company and another appeal.

*Decrees reversed, injunctions dissolved, and bills dis-
missed.*

*Cox & Baker, Joseph H. Gaines* and *Moreland & Guy,* for
appellants.

*Glasscock & Glasscock* and *Goodwin & Reay,* for appellees.

LYNCH, PRESIDENT:

The decrees entered in these causes, argued and submitted
together, canceled the two oil and gas leases made to G. B.
Armstrong in 1898, one of them by W. J. Clark and wife
June 15 on 136 acres, the other by S. J. Johnson and his
sister Abigail J. Johnson June 16 on 75 acres, as clouds upon
the title of the owners and upon the oil and gas rights and
estates of Joseph H. McDermott and Pentress Gas Company,
his assignee thereof. The Chartiers Oil Company and Mon-
ongahela Natural Gas Company have appealed.

The Chartiers Oil Company acquired by assignment from
Armstrong in 1898 the right to mine and market the oil and
gas in each tract, and the Monongahela Natural Gas Com-
pany by assignment from it in 1905 the right to mine and
remove the gas therefrom, the gas company assuming the

duty to perform the terms and conditions and requirements of each agreement.

The leases differ solely as to the names of the landowners, the quantity of land embraced, cash consideration paid and the compensation provided for the gas from each well producing gas only. Each of them granted the usual surface rights, including the right to remove property used in drilling and operating and to surrender the lease at any time the lessee may elect, and provides the time, manner and place of payment of moneys payable under the terms thereof, and reserves as royalty one-eighth of the oil produced and saved from each tract. Neither group of owners had or have any interest in common in the two tracts; the leases are separate and independent contracts, although the questions for solution are identical.

The provision most material and vital upon the issues involved, and except as to money consideration in lieu of drilling, is: "In case no well is completed within three months, then this grant shall become null and void, unless the second party pay to said first party thirty-four dollars in advance for each three months thereafter such completion is delayed". There is in neither agreement any other provision that attempts to limit or define the term within which the lessee or his assigns shall drill. The duration of the term, according to this clause or stipulation, was made to depend upon the discovery of oil or gas, or in lieu thereof payment of the specified sum quarterly in advance to the lessors. No well was drilled on either tract within the first or any subsequent three months' period provided for. But, until December, 1914, the Chartiers Oil Company or Monongahela Natural Gas Company regularly and promptly made the required quarterly advance payments in lieu of a well, and the lessors, without objection or complaint, and without demanding active operations for the production of these minerals, accepted the payments as and when made in the mode, at the time and in the amounts provided in the agreements; and the parties agree that the Monongahela Natural Gas Company in the same manner thereafter regularly tendered the delay rentals, and that the lessors refused to accept them.

Notwithstanding the payments and the acceptance thereof, without protest or demand, the widow and heirs of W. J. Clark (he having died intestate in the meantime) on December 12, 1914, three days before the expiration of the last quarter for which the delay rental had been paid and accepted, notified the Monongahela Natural Gas Company of their intention and purpose immediately to cancel the contract made to Armstrong in 1898 with respect to the 136 acres; and the Johnsons on December 16 of the same year, and on the first day the delay extension rental for the ensuing quarter became due, although theretofore tendered, gave a like notice to the same company—the company which since it had acquired the gas rights in each tract by assignment in 1905 had paid the quarterly compensation in advance as required by the leases. Omitting immaterial details, the notice by the Clarks is: "You are hereby notified that we, being the widow and all the heirs of W. J. Clark, deceased, desire to cancel, terminate and annul a certain leasehold for oil and gas purposes made by said Clark in his lifetime to G. B. Armstrong, dated the 15th day of June, 1898, for 136 acres of land; and the undersigned hereby further notify you that they will refuse to take and accept rental for said premises after December 14, 1914, or to extend the lease under the terms and conditions contained therein". The notice by the Johnsons is: "You are hereby notified that we and each of us refuse to accept any further oil and gas rental from you as the lessee of that certain tract of 75 acres of land more or less" leased to Armstrong in 1898, and "that we hereby return to you your draft for the sum of $18.75, sent us in payment of quarterly rental, dated the 11th day of December, 1914, and that we refuse to be further bound by the terms and conditions of this lease, and will treat the same as cancelled, null and void, and of no further binding effect".

The Johnsons on March 1 and the Clarks on April 9, 1915, severally leased to Joseph H. McDermott the 136 acres and 75 acres to mine and operate each tract for oil and gas production, which leasehold rights conferred by the Clark lease and three fourths interest in the leasehold rights conferred by

the Johnson lease McDermott assigned and transferred to the Pentress Gas Company, subject to, and binding it to perform, each and all of the provisions, conditions and covenants, including the payment of rents and royalties, in the manner and to the extent prescribed by these leases.

Acting under the authority of the leases so assigned and transferred, the Pentress Gas Company in November, 1915, entered upon the lands and began preparations to explore for and produce the mineral oils and gas therein, as did also the Monongahela Natural Gas Company upon the authority of the leases to Armstrong. But neither company so entered until after each of them had notified the other of its claim to leasehold rights and estates under the respective lease contracts executed by the owners of the land. The plaintiffs in each of these causes thereupon filed their bills and obtained the injunctions made perpetual by the decrees complained of, enjoining Armstrong, the Chartiers Oil Company and Monongahela Natural Gas Company from entering on such lands for any purpose and from interfering in any manner with the exercise of the rights conferred by the leases to McDermott.

The first contention or claim is that the agreements with Armstrong, being in the nature of or having some of the characteristics of a perpetuity, could be and were destroyed or terminated by the notices by the landowners; and, whether this claim be well founded or not, that, if Armstrong or his assigns could at will surrender the lease contracts, the owners could also terminate them, and did do so, by these notices; and also that, as these contracts could be extended by payments of a money consideration from quarter to quarter, the owners, by declining to accept such payment, could terminate the leasehold rights at the end of any quarter they might fix for that purpose. These are the theories which constitute the bases or predicates of the decrees and of the argument to sustain them.

It can not be said, in view of the principles enunciated and repeated in our own decisions, that contracts in the nature of grants of oil and gas, conferring upon the grantee the

right to enter upon the land, mine and remove these minerals, and reserving one-eighth of the oil as compensation in the form of royalties, confer any authority superior to or different from the ordinary and usual lease contracts. They may differ in form, substance and rank, but in essence and effect they are the same. One kind fixes a definite or specific term, with a provisional extension thereafter, subject to the discovery of oil or gas within the term designated in the agreement. If no production is obtained within the term, this of itself works the destruction of the rights conferred. They thereafter cease to have a potential existence, and become nullities. While the other form of contract imports a grant of the oil and gas in place, the particular terms or provisions thereof operate to convert it into the right to mine and remove the minerals upon the same terms, conditions, rents and royalties as are authorized generally in the common oil and gas lease contracts. Such dissimilarity as may seem apparent is really inconsequential, when viewed in the light of the powers and duties conferred and imposed by the different classes of oil and gas agreements. They are in effect the same, and not essentially different; and, as they accomplish the same results, the form is immaterial.

Though the instruments executed to Armstrong, and by him assigned, purport to grant all the oil and gas contained in the two tracts, yet, considered in their entirety, they only confer the right to produce and market such oil and gas upon the payment of rentals and royalties. The sole distinguishing feature is that no definite or specific limitation or restriction is prescribed as to the time when the right to explore shall end and the license or privilege granted shall cease. Hence, the grants are similar to the one construed in *Oil Co.* v. *Guffey,* 52 W. Va. 88, to create a lease from year to year at the option of the lessee until a well is completed, the difference there being that the contract was to be null and void if a well were not drilled in two years, and that a forfeiture could be prevented by an annual payment of the sum specified therefor. Likewise, we held in *Thaw* v. *Gaffney,* 75 W. Va. 229, that the grant of a right to construct two residences, and to occupy them for a definite period and as long there-

after as the grantee might elect to pay the sum agreed upon, created such a right as the grantee could continue indefinitely by the payment of such sum; wherefore the covenant did not violate the rule against perpetuities. See also *Oil Co.* v. *Snodgrass,* 71 W. Va. 438; *Gas Co.* v. *Manufacturing Co.,* 72 W. Va. 757; *Reserve Gas Co.* v. *Wilson,* 78 W. Va. 329. In the case last cited, the original lease, in the common oil and gas lease form, was supplemented by an additional agreement in substance and effect providing that both contracts should become null and void unless the lessee should pay a specific sum quarterly in advance or drill a well on the land described, but that he might drill or not as he elected. We held that the agreements did not create a mere tenancy at will determinable at the option of the lessors, or void as a perpetuity; but that "the lessors may require development after the end of any quarter for which the lessee has paid the agreed consideration for delay, upon reasonable notice to the lessee, and in the event of his failure to drill within a reasonable time after such notice equity will cancel the contracts upon the lessors' application for such relief". Both parties rely on this case as supporting their contentions, conceding that the grants to Armstrong do not offend against the rule relating to perpetuities. But, upon principle and authority, that case holds unequivocally, as do the cases therein cited, not only that a lessee can not indefinitely hold contracts of this kind without operations to render the land valuable by the production of the minerals which the lease authorizes him to mine and market for the joint use and benefit of the parties thereto, according to its terms and covenants, but that if, when notified to proceed with developments, he negligently fails or refuses to inaugurate within a reasonable time thereafter and diligently prosecute such drilling operations as may reasonably be deemed necessary or sufficient to test the land for these products, equity will grant relief by cancellation upon application therefor by the owner or lessor.

There was here, as we have said, no demand to drill or notice of an intention to declare a forfeiture, no warning that the lessors were dissatisfied with deferred operations, nothing to show a premeditated disposition summarily to cut short

and end the rights granted by the contracts, when, without such demand, notice or warning, the lessors arbitrarily and immediately signified a purpose to deprive the lessees of that for which they had invested several thousand dollars upon the faith and belief that no reason or cause existed for such action or determination on the part of the source from which the right claimed by them was derived. Apparently, the purpose to abrogate all contractual connection with the lands leased and to work the destruction of the oil and gas rights granted, without an opportunity to drill or exercise dominion over the lands to admit of the usual preparations to perform the material covenants of the agreements, came as a surprise, after sixteen years' acquiescence in the delays of which the lessors now complain notwithstanding their complacent acceptance of the compensation to which they agreed as sufficient consideration for such delay. Will equity sanction the arbitrary destruction of leasehold rights and privileges so purchased and paid for? Our decisions answer that question. *Reserve Gas Co.* v. *Wilson, supra,* and cases cited in the opinion.

And, with the declaration of an immediate forfeiture before it, without a demand or opportunity to drill within a reasonable time to preserve such leasehold rights, it can not justly be said the failure of the Monongahela Natural Gas Company to enter on the lands thereafter and commence developments before the leases to McDermott were executed, should be regarded as evincing lack of diligence, entitling the lessors to enforce the forfeiture declared, or as of itself constituting a ground of forfeiture. *Reserve Gas Co.* v. *Wilson, supra; Jennings* v. *Carbon Co.,* decided November 13, 1917; *Gas Co.* v. *Kensay,* 164 Ind. 563; *Consumers Gas Trust* v. *Ink,* 163 Ind. 174. The very terms of the notices were sufficient to deter an attempt to enter on the lands for any purpose. Their effect was to warn against such entry. The leases to McDermott emphasized such effect and intention. Disregard of them would perhaps have brought about the very situation now being dealt with. The failure then to go upon the lands merely deferred these proceedings. Otherwise, doubtless the bills would have been filed and the injunctions awarded ear-

lier :than they were. Moreover, every moment operations were delayed prior to the date of the declarations of forfeiture excused drilling. Neither the owners of the land nor the subsequent lessees could have compelled operations within any preceding quarter. Can they, then, deprive the gas company of the right to do later what they could not have compelled it to do by reason of the advance payments? We think it equitable and just that it should not arbitrarily be deprived of a reasonable opportunity to comply with the condition to drill, upon a demand for compliance before the destruction of its rights was attempted—an opportunity which the declarations of forfeiture denied unto it.

Being of this opinion, we reverse the decrees, dissolve the injunctions, and dismiss the bills.

*Decrees reversed, injunctions dissolved and bills dismissed.*