## MILLER et ux. v. HODGES et al.
### (No. 499–3903.)

(Commission of Appeals of Texas, Section A. April 2, 1924.)

**1. Mines and minerals ⊗⇒58—Description of land held sufficient to pass legal title to minerals.**

A description of land in an oil and gas lease as "136⁴/₁₀ acres out of the Wm. Curdy survey, fully described by warranty deed at Palo Pinto, Tex., book 77, page 269," held sufficient to pass legal title to the minerals.

**2. Mines and minerals ⊗⇒58—Failure to state town, county, or state wherein land is situated not fatal, if instrument furnishes sufficient means of identification by aid of extrinsic evidence.**

Failure of a deed or other instrument, such as an oil and gas lease, to state the town, county, or state wherein the land is situated will not make it void or inoperative, if it furnishes sufficient means of identifying the property conveyed by aid of extrinsic evidence, which is admissible, not to add to or modify the description in the instrument, but to explain the calls therein and apply them to the subject-matter.

**3. Mines and minerals ⊗⇒73—Rule as to ascertaining parties' intent as to property conveyed stated.**

In ascertaining the parties' intent as to the property conveyed by a deed or other instrument, such as an oil and gas lease, in case of doubt the court will consider all the facts and circumstances existing when the parties contracted, and will assume their position as nearly as possible so as to interpret, their language in the light of such circumstances.

**4. Mines and minerals ⊗⇒73—Parties' construction of uncertain words in description of land considered.**

If the words used in describing land in a deed or other instrument of conveyance, such as an oil and gas lease, are uncertain, resort may be had to the construction given them by the parties, which is a strong circumstance in ascertaining their intent.

**5. Mines and minerals ⊗⇒58—Description of land in oil and gas lease held sufficient to pass title to minerals.**

A description of lands, in an oil and gas lease as "160 acres of the Josiah Taylor, Abst. 680, 360 A. survey No. 2, Abst. 1991, being the west side of survey, 155 Wm. McCurdy, Abst. 938, being the east side of this survey and adjoining the Josiah Taylor on the west, containing 675 acres more or less," held sufficient to pass title to the minerals therein conveyed, when considered in the light of all the circumstances shown by extrinsic evidence and the practical construction of the instrument by the parties.

**6. Mines and minerals ⊗⇒74—Assignment of interest in oil and gas lease and rights thereunder held conveyance of instruments as well as title to minerals conveyed.**

An assignment of all of assignor's "right, title, and interest in and to the leases aforesaid, and all rights thereunder," held not a quitclaim, but a conveyance of oil and gas leases therein referred to, and as well as the same title to the minerals that such instruments conveyed.

**7. Mines and minerals ⊗⇒74—Purchasers of interest of one adjudged true owner of oil and gas leases to another held bona fide purchasers.**

That purchasers of the interest of one adjudged the true owner of oil and gas leases executed to another held under such judgment did not prevent them from being bona fide purchasers; the situation being the same as if the true owner's name was written in the original instrument.

**8. Mines and minerals ⊗⇒73—Conveyance of oil, gas, and other minerals with privilege of mining, producing, etc., vests determinable fee.**

An oil and gas lease in substantially producers' form No. 88, granting and conveying all oil, gas, and other minerals, with the privilege of mining, producing, etc., vests a determinable fee in such minerals, conditioned on performance of grantee's and his assignees' obligations.

**9. Contracts ⊗⇒303(4)—Condition, performance of which is prevented by act of other party, considered fulfilled.**

Where the obligation of a party depends on performance of a condition, fulfillment of which is prevented by the other party, such condition is considered fulfilled.

**10. Mines and minerals ⊗⇒73(1)—Reasonable time after termination of unsuccessful litigation by lessor allowed lessee for performance of conditions.**

Where lessor in an oil and gas lease brings suit to have it decreed void or declared terminated, thereby interrupting the term during which lessee would otherwise be able to operate, and his suit, after expiration of the term, is unsuccessful, the interruption cannot be charged to lessee, but a reasonable time after termination of the litigation will be allowed him for performance of the conditions.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by John M. Miller and wife against E. A. Hodges and others. Judgment for plaintiffs reversed, judgment rendered for defendants, and cause remanded (244 S. W. 634), and plaintiffs bring error. Affirmed.

P. C. Sanders, of Strawn, and Chandler & Pannill, of Stephenville, for plaintiffs in error.

H. S. Garrett, John Hancock, and J. C. Smith, all of Fort Worth, R. E. Hardwicke, of Caracas, Venezuela, S. A., W. H. Francis and A. S. Hardwicke, both of Dallas, Gross,

Gross & Zively, of Mineral Wells, E. E. Townes, of Houston, Scott Key, of Eastland, and Robt. A. John, of Houston, for defendants in error.

GERMAN, P. J. On August 14, 1917, plaintiff in error Dora M. Miller was the owner of three tracts of land in Palo Pinto county as follows: The Josiah Taylor 160-acre survey, abstract No. 680, the west half of Gulf, Colorado & Santa Fé Railway Company survey No. 2, abstract No. 1991, containing 360 acres more or less, and the east 155 acres of the Wm. McCurdy survey, abstract No. 938, adjoining the Josiah Taylor survey on the west. On that date John A. Geupel, the father of Mrs. Miller, was the owner of 134½ acres of the Wm. McCurdy survey in Palo Pinto county, fully described by metes and bounds in volume 77, page 269, of the deed records of that county. On the date mentioned Dora M. Miller, joined by her husband, John M. Miller, executed in favor of Dean R. Low an oil and gas lease, being substantially what is known as producers' form No. 88, granting and conveying unto the said Low all oil, gas, and other minerals, with privilege of mining, producing, etc., which contained this clause:

"This grant is not intended as a mere franchise, but is intended as a conveyance of the property above described for the purpose herein mentioned, and it is so understood by both parties to this agreement."

This instrument was filed for record in Palo Pinto county, and recorded in the deed records of that county. The residence of the grantors is recited to be in Palo Pinto county, and it was acknowledged before a notary public of that county. The description of the lands as contained in that instrument is as follows:

"160 acres of the Josiah Taylor, Abst. 680.
"360 A survey No. 2, Abst. 1991, being the west side of survey.
"155 Wm. McCurdy, Abst. 938, being the east side of this survey, and adjoining the Josiah Taylor on the west, containing 765 acres more or less."

On the same date John A. Geupel executed a similar lease in favor of Dean R. Low, in which he recited his residence as being in Palo Pinto county, and which was acknowledged before a notary public of that county. This instrument was filed for record August 18, 1917, and recorded in the deed records of Palo Pinto county. The description contained in this instrument is as follows:

"136$^4$/$_{10}$ acres out of the Wm. Curdy survey, fully described by warranty deed at Palo Pinto, ' Tex., book 77, page 269, containing 136$^4$/$_{10}$ acres more or less."

In the procuring of these leases one Ned Palmer represented Dean R. Low. It was the understanding of all parties that said leases were to continue and be in force for only three years from the date thereof, unless oil or gas was produced in paying quantities. In the preparation of said leases they were by mutual mistake made to read so as to be absolute for one year from their date, and could be extended for an additional period of three years by payment of a certain yearly rental; thus the effect of the instruments (if the conditions were complied with) was to make them valid leases for a period of four years instead of three years, and, if oil or gas was discovered, they were to be in full force so long as the same was produced in paying quantities.

After the execution of the lease by John A. Geupel he died, and 101 acres of the land covered by his lease passed by will to Mrs. Miller, and was owned by her at the time of the institution of this suit.

The record shows that, while these leases were taken in the name of Dean R. Low, yet M. A. Low furnished the consideration for same and was the real owner. Dean R. Low died, and in a regular proceeding had in the district court of Parker county, May 2, 1919, between M. A. Low and the widow and children of Dean R. Low, M. A. Low was adjudged to be the true owner of the leases, and he was quieted in his title thereto. On February 21, 1920, M. A. Low, for a valuable consideration, transferred and assigned to E. J. Kelley all of his right, title, and interest in the two leases mentioned. By proper assignments from Kelley an interest in said leases passed to E. A. Hodges, C. H. Thompson, A. W. Cooper, and A. L. Duncan. Kelley and the other purchasers had no knowledge or notice of any facts in connection with the negotiations between Ned Palmer on the one hand and the Millers and Geupel on the other, except as disclosed by the written instruments themselves.

This suit was filed September 23, 1920, by John M. Miller and Dora M. Miller, who will be designated plaintiffs, against E. A. Hodges and others, who will be designated defendants, to remove cloud from title, and to have judgment decreeing that said leases had expired August 14, 1920, the end of the three-year period. They alleged that by fraud or mutual mistake the written leases had been made to continue for a four-year period rather than for three years, as agreed upon by the parties. The defendants contended that they had purchased in reliance upon the written terms of the leases, and were entitled to be protected as bona fide purchasers. The trial court found against plaintiffs' contention as to fraud, but in favor of their claim of mutual mistake. That court also concluded as a matter of law that the instrument executed by Miller and wife did not describe the land with that degree of certainty required in a conveyance, and that the same conveyed only an equitable title; that therefore defendants could not be bona

fide purchasers thereunder. The court also held that each of the leases, after the lapse of one year, was optional, and as the legal title did not pass thereunder the defendants could not be bona fide purchasers. It was therefore adjudged that said leases had expired and defendants had no further rights or title thereunder. The Court of Civil Appeals reversed the judgment of the district court, and rendered judgment in favor of defendants. However, as the four years provided for in the leases had not expired at the time suit was instituted, the case was remanded for the purpose of determining what would be a reasonable time for an extension of the leases within which defendants would have the option of beginning operations. 244 S. W. 634.

Plaintiffs are contending that defendants are not bona fide purchasers for the following reasons: (1) Because the description of the lands in the lease from Miller and wife were so uncertain and insufficient that the legal title to the minerals did not pass, and defendants could not claim to be innocent purchasers under same. (2) That the assignment under which defendants claim was a mere quitclaim, and could not support the doctrine of innocent purchaser. (3) That one of the links in the chain of title was a judgment. (4) That the leases did not purport to convey the legal title to the minerals, but were only options. (5) That being options, no extension of time could be allowed, although suit was filed before the four-year period had expired.

[1] The most difficult of these contentions is the first one. The trial court has found that the description contained in the Geupel lease was sufficient, and no contention seems to be urged with reference to that. We think that description amply sufficient to pass the legal title to the minerals, and it is not necessary to refer to it again.

[2] The gravamen of plaintiffs' contention is that the description is insufficient and the lease by the Millers was inoperative to pass the legal title to the minerals because the state and county where the lands are situated are not given. It may be stated; we think, as a well-settled proposition that if the deed or written instrument furnishes other sufficient means of identifying the property conveyed, the failure to state the town, county, or state where the same is situated will not make the instrument void or inoperative. Flegel v. Dowling, 54 Or. 40, 102 Pac. 178, 135 Am. St. Rep. 815, 19 Ann. Cas. 1159, and many cases cited. The courts of other states have held that location of the land may be inferred from the residence of the grantor, the place of the acknowledgment, and the place of the filing and recording of the instrument, when these are consistent with the true facts as to the ownership of the property. Garden City Sand Co. v. Mil-

ler, 157 Ill. 225, 41 N. E. 753; Smith v. Clifford, 99 Ind. 113; Bryan v. School, 109 Ind. 367, 10 N. E. 107. This is clearly the tendency of decision in this state. Langham v. Gray (Tex. Civ. App.) 227 S. W. 741, and the cases cited; Petty v. Wilkins (Tex. Civ. App.) 190 S. W. 531.

In 8 R. C. L. p. 1074, it is said:

"The sole purpose of a description of land, as contained in a deed of conveyance, being to identify the subject-matter of the grant, a deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it is intended to convey."

This general rule has been many times stated by our courts. The extrinsic evidence which is admissible must not be for the purpose of adding to or modifying the description contained in the deed, but is for the purpose of explaining the calls in the deed and applying them to the subject-matter, and thus give effect to the deed. The general rule may be stated in this way: The description in a deed or contract, while it need not in itself fully and definitely identify the property conveyed, must contain sufficient particulars to afford or point out the means whereby identification may be completed by parol evidence.

[3] In 18 C. J. 277, this rule is announced:

"The intent of the parties, as manifested by the language of the deed, will, as a general rule, control in determining the property conveyed, and in case of ambiguity or uncertainty the language of the description will be liberally construed in order to effectuate, if possible, such intention."

In ascertaining this intention, in cases of doubt, the court will consider all of the facts and circumstances existing at the time the parties contracted, and will as nearly as possible assume their position, so as to interpret their language in the light of the circumstances as they were when the transaction was made. The following quotation has been adopted by the courts for many years;

"The rule is that where the writing within itself, or by reference to other writings, contains sufficient data so that by the aid of parol evidence no question as to the intention of the parties can arise, it is sufficient. The most specific and precise description of the property requires some parol proof to complete the identification. A more general description requires more. When all the circumstances of possession, ownership, situation of the parties, and their relations to each other and the property, as they were when the negotiations took place and the writing made, are disclosed, if the meaning and application of the writing, read in the light of those circumstances, are certain and plain, the parties will be bound by it as a sufficient written contract or memorandum of their agreement."

[4] It is also a well-established principle that, if the words used in the description of a deed are uncertain, resort may be had to the construction given them by the parties themselves; and, where they have given same a practical construction and made them applicable to certain property, this will be a strong circumstance in ascertaining their intention. See 18 C. J. 279, and authorities cited.

[5] Keeping these general principles in mind, we have no difficulty in deciding that the description of the lands in the Miller lease is sufficient to pass title to the minerals as therein provided. At the time this instrument was executed Mrs. Miller owned the Josiah Taylor survey of 160 acres, abstract No. 680, also the west half of Gulf, Colorado & Santa Fé Railway Company survey No. 2, abstract No. 1991, and the east 155 acres of the Wm. McCurdy survey, abstract No. 938, all situated in Palo Pinto county, Tex. These were all the lands she and her husband owned at the time. They were living upon these lands as their homestead. It is admitted that they intended to have the lease cover these identical lands, and did not know that the description was in any way imperfect. By mutual agreement with Thompson who owned an interest under the lease, a survey and plat was made of a part or all of these lands, and at the request of Thompson plaintiffs obtained a patent to the west half of survey No. 2 in order to perfect the title; Thompson paying the surveying fees. Plaintiffs also admit that they accepted the rental for two years on the theory and believing that same applied to these particular lands. The trial court also found that defendants had gone on these lands and selected a place for the drilling of a well prior to the expiration of the three-year period. The evidence shows that Gulf Colorado & Santa Fé Railway Company survey No. 2 was commonly designated by the parties as survey No. 2. In the light of all these circumstances, and the practical construction placed on the terms of the instrument by the parties themselves, we are of opinion that the description contained in the lease clearly and definitely identified these lands owned by plaintiffs as the particular lands intended to be described. If we indulge the inference, as all the facts and circumstances justify us in doing, that the lands are situated in Palo Pinto county, then the official abstract numbers, and the names of the surveys, are sufficient to identify the particular lands referred to in the lease. However, the description is sufficient in the absence of such inference. As plaintiffs owned all of the Taylor survey and the east and west parts of the other surveys, this case does not fall in that class of cases where indefinite and undefined part of a larger survey is conveyed. Neither are the cases relied upon by plaintiffs, of which Rosen v. Phelps (Tex. Civ App.) 160 S. W. 105, is the leading

one, applicable, because in those cases there was no sufficient description, in the absence of a designation of the county and state, by which the land could be identified. For instance, in the case of Boyd v. Boyd, 34 Tex. Civ. App. 57, 78 S. W. 39, the court said:

"That instrument was void because it did not designate in what county, parish, or state the lands were situated, nor give any other description by which they could be identified."

In further support of our conclusion we refer to the following cases: Hermann v. Likens, 90 Tex. 448, 39 S. W. 282; Pierson v. Sanger, 93 Tex. 160, 53 S. W. 1012; Hopkins v. Walters (Tex. Civ. App.) 224 S. W. 516; Flannagan v. Boggess, 46 Tex. 330; Diffie v. White (Tex. Civ. App.) 184 S. W. 1065; Crimp v. Yokeley, 20 Tex. Civ. App. 231, 48 S. W. 1116; McKinney v. Raydure, 181 Ky. 163, 203 S. W. 1087; Kleine v. Kleine, 281 Mo. 317, 219 S. W. 610, 8 A. L. R. 1335.

[6] The next contention of plaintiffs is not well taken. The assignment from M. A. Low to Kelley, after making reference to the various leases, sold, transferred, and assigned "all his right, title, and interest in and to the leases aforesaid, and all rights thereunder." This was not a quitclaim, but conveyed the instruments as well as the same title to the minerals that the instruments themselves conveyed, according to the language used. Harlowe v. Hudgins, 84 Tex. 109, 19 S. W. 364, 31 Am. St. Rep. 21; Threadgill v. Bickerstaff, 87 Tex. 520, 29 S. W. 757.

[7] We can see no force in the contention of plaintiffs that because defendants hold under the judgment of the district court of Parker county they cannot be bona fide purchasers. The effect of that judgment was merely to declare M. A. Low to be the real and true owner of the leases, and we think the situation is the same as if the name of M. A. Low had been written in the face of the original instruments instead of Dean R. Low.

[8-10] The legal effect of the conveyance from Miller and wife to Low, as has been recently held in numerous cases by the Supreme Court, was to vest a determinable fee in the oil, gas, and minerals in the land, conditioned upon the performance of the obligations by Low and his assignees. At the time suit was filed about eleven months of the four-year period provided for in the leases had not expired. Judgment was entered October 30, 1920, and at this time there remained about nine and one-half months in which defendants had option to carry out the terms of the contract. The court found that defendants had made arrangements to commence drilling of a well on plaintiffs' lands, and had gone on the ground and inspected a place to drill, and would have started the drilling of such well in a short time had plaintiffs not served defendant Thompson with notice to the effect that they would treat

the lease as terminated on August 14, 1920. This notice was dated July 6, 1920. The defendants tendered all rentals due to authorize an extension of the lease for the third year, and had done everything required of them to prevent a forfeiture up to the time suit was begun. It is a universal maxim that, where the obligation of a party depends upon a certain condition being performed, and the fulfillment of that condition is prevented by the act of the other party, the condition is considered as fulfilled. It follows, therefore, that where the lessor in an oil and gas lease brings suit to have it decreed void, or declared terminated, and thereby interrupts the term during which the lessee would otherwise be able to operate and his suit is eventually and after the expiration of such term unsuccessful, the interruption cannot be charged to the lessee; but a reasonable time after the termination of the litigation will be allowed him in which to perform the conditions required of him. Texas Pacific Coal & Oil Co. v. Patton (Tex. Civ. App.) 238 S. W. 202; Halla v. Rogers, 176 Fed. 709, 100 C. C. A. 263, 34 L. R. A. (N. S.) 120; Standard Oil Co. v. Webb, 149 La. 245, 88 South. 808; Johnson v. Armstrong, 81 W. Va. 399, 94 S. E. 753; New American Oil & Mining Co. v. Troyer, 166 Ind. 402, 76 N. E. 253, 77 N. E. 739. The proposition seems to be so well settled that it is unnecessary to cite other authorities.

This disposes of all the assignments by plaintiffs, and we therefore recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.