# CHARLESTON.

## STANLEY v. UNITED FUEL GAS CO.

Submitted October 3, 1916.   Decided October 10, 1916.

1. MINES AND MINERALS—*Oil and Gas Lease—Implied Covenant.*

   In an ordinary oil and gas lease there is no implied covenant by the lessee to protect the leased premises against drainage through flowing wells on adjacent lands, by drilling offset wells, which is effective within the time for which the lessor has accepted a consideration in lieu of development.   (p. 795).

2. ·Former Decision Followed. ·
     Points of syllabus in *Carper* v. *United Fuel Gas Co.*, 78 W. Va.
     433, 89 S. E. 12, approved and applied.   (p. 595).

Error to Circuit Court, Putnam County.

Action by Joel Stanley against the United Fuel Gas Company.   Judgment for plaintiff, and defendant brings error.

                                        *Reversed and remanded.*

*R. G. Altizer*, for plaintiff in error.

*A. S. Alexander*, for defendant in error.

Williams, President:

Plaintiff, the lessor, recovered a judgment against defendant, the lessee, in an action for damages for an alleged breach of covenant, in an oil and gas lease, to drill offset wells upon the leased premises, and thereby protect it from drainage through wells drilled upon adjacent lands, and defendant was granted this writ of error.

Defendant acquired by assignment from the Elkton Gas & Oil Company, on October 17, 1906, an oil and gas lease which plaintiff had executed to that company on April 24, 1905, covering a tract of land in Putnam and Lincoln counties, described as containing 85 acres.   The lease is in the usual form of oil and gas leases.   It obligates the lessee to deliver into its pipe lines, for the lessor, one-eighth of all the oil produced and moved from the premises, and to pay $100.00 annually, in semi-annual payments, for each gas well, the product from which should be used off the premises.   It was to become void if no well was completed within four months from its date, unless the lessee should pay to the lessor, quarterly in advance, $21.25.   If gas should be found the lessor was to have free gas for use in his dwellings on the premises, so long as gas was utilized from any well on the leased premises.   The lessee was given the option, which it could exercise at any time by payment of one dollar, to surrender the lease and terminate all rights and obligations thereunder, except that the lessee had the right to repair, operate and remove any pipes laid on the premises.   Under date of February 25, 1913, said Stanley executed to defendant another

er oil and gas lease on the same property, for a period of
20 years, and as long thereafter as oil or gas should be produc-
ed, and on the 22nd of September, 1913, defendant surrender-
ed the first lease. The terms of the second lease vary in some
respects from the first, although its general tenor is the same.
It differs, in that it obligated the lessee to drill a well on the
premises by May 24, 1913, or pay $30.00 quarterly in advance,
and to pay $200.00 annually, in quarterly installments of
$50.00 each, for each gas well, while the gas was sold there-
from. It likewise permitted the lessee to surrender the lease,
at any time, on payment of $1.00 to lessor or upon depositing
it to his credit in the Putman County Bank of Hurricane.
The second lease was surrendered on the 22nd of February,
1915. All delay rentals accruing under either of the leases
were paid, the last being for the quarter ending February 24,
1915, two days beyond the date of cancellation of the lease.
No well was ever drilled on the premises.

Three small gas producing wells had been drilled on lands
adjoining plaintiff's, but not by this defendant; one to the
north 127 feet of his line; one to the south 134 feet from his
line, and one to the west 360 feet from his line. Believing
that these wells were draining the gas from his land and that
the lessee was bound to drill offset wells and protect it against
such drainage, plaintiff brought this suit, the trial of which
resulted in a verdict and judgment for plaintiff for $1,500.00.

A number of errors are assigned as cause for reversal, all
of which we need not consider, as this case is governed by the
principles recently announced in _Carper_ v. _United Fuel Gas
Co._, 78 W. Va. 433, 89 S. E. 12. The principal question
there presented was somewhat novel and also extremely im-
portant, because of the magnitude of the oil and gas indus-
try in this state and the numerous lessors whose rights, under
existing leases, were to be affected by its solution. Conse-
quently the court devoted more time to the consideration of
that case than it generally gives to the decision of cases; in
fact, the decision was made after a rehearing of the case had
been granted and after it had been twice argued by able coun-
sel, a number of whom, because of the interests of their clients
in the principle to be determined and made a precedent, ap-

pearing as *amici curiae.* The reasons in support of the points of law therein decided are fully set forth in a carefully prepared opinion by Judge Poffenbarger, and it is unnecessary to repeat them here. Still being of the opinion that those principles are sound, we need only refer to them in this opinion.

The declaration in that case was held bad on demurrer, and it is insisted that the failure of the declaration, in the present case, to aver non-payment or non-acceptance of delay rentals is fatal, and the demurrer should have been sustained. We do not think so, for the reason that it does aver an express promise by defendant to drill offset wells for the purpose of protecting plaintiff's land against drainage through producing wells on adjacent lands. The breach of such an express undertaking by the lessee would produce liability, regardless of whether or not the delay rentals were paid, and this averment saves the declaration. But the proof does not support the averment; no express agreement to drill offset wells was proven, and none can be implied from the lease contract, in view of the fact that all delay rentals in lieu of drilling were paid and accepted. We held in *Carper* v. *United Fuel Gas Co., supra,* that, during the period for which delay rentals in lieu of drilling have been paid, there is no implied covenant to protect leased premises by drilling offset wells, and during such period the lessor was not entitled to damages for failure of the lessee to drill offset wells, but that there was an implied condition, in the event of drainage or immediate danger thereof, that the lessee would, upon demand of the lessor and notice of his purpose to forfeit the lease in case of failure to comply with the request, drill offset wells within the last period for which delay rental has been or shall be accepted, or commence to drill and diligently prosecute the work. No such demand and notice were given in this case, and plaintiff admits he accepted delay rental for the quarter ending February 24, 1915, which was two days beyond the life of the lease; it was surrendered on February 22, 1915. There was, therefore, no time within the life of the lease when plaintiff was in a position to recover damages for failure to protect his property against drainage. He never at any time

notified the defendant or its assignor of the first lease, the Elkton Gas & Oil Company, of a purpose to forfeit the lease, if offset wells were not drilled, nor did he refuse to accept any of the delay rentals, all of which appear to have been regularly and promptly paid. True, plaintiff testified that he requested defendant to drill and says it had five or six months thereafter and before it surrendered the lease within which to drill, which he contends was ample time. But by accepting delay rentals thereafter he waived his right to demand damages for failure to drill.

Plaintiff's instructions Nos. 1, 2 and 4 were given on the theory that there was an implied covenant to protect, notwithstanding payment and acceptance of rental in lieu of drilling, and were inproper. We find no fault with his No. 3, which was given; nor with the two instructions given on behalf of defendant.

The judgment is reversed, the verdict set aside and the case remanded.

*Reversed and remanded.*