# CHARLESTON.

JULIA ISRAEL LAMP *et als.* v. JOHN T. LOCKE *et als.*

Submitted September 20, 1921.        Decided October 4, 1921.

1. INJUNCTION—*Mandatory Injunction Given Only Where Right is Clear and Necessity Urgent.*

   Relief by mandatory injunction will be given only where the right of the applicant is clear and the necessity urgent. (p. 145).

2. SAME—*Will Lie to Compel Drilling of Offset Well Where Parties Conspire to Defeat Plaintiff's Right to Royalties.*

   Such remedy will be awarded where there is a collusive agreement between a lessor and lessees of a tract of gas producing land whereby the gas therein is being extracted and exhausted by a well five feet distant from the boundary line, and on an adjoining tract under lease and control of the parties to such collusive agreement, with the intended result that the plaintiff, who is a joint owner of one half of the gas royalty in the first named tract, is prevented from receiving any royalty therefrom, to his irreparable loss; especially where his right to such royalty has a time limit which will expire within one year. In such case a mandatory injunction will lie to compel the drilling of an offset well. (p. 145).

3. EQUITY—*Bill Need Not Follow Statutory Form, and is Not Demurrable for Indefiniteness as to Parties if Naming Them With Their Interests in Subject Matter and Relief Sought.*

   It is not essential that a bill in chancery shall follow the

form given in sec. 37, chap. 125 of the Code; a substantial compliance therewith is sufficient, and, if the bill in any of its parts names the parties therto, their interest in the subject matter, and relief sought, it is not demurrable for indefiniteness as to parties.  (p. 148).

4.   SAME—*It is Not Error to Require Defendant to Answer Within a Reasonable Time After Overruling Demurrer to Bill.*

A defendant may appear and demur to a bill before it has matured for hearing, and if he does so and the demurrer be overruled, it is not error to then require him to answer within a reasonable time.  (p. 149).

5.   APPEAL AND ERROR—*Ruling on Demurrer Received Without Motion to Correct Judgment, But Not Errors in Decree After Demurrer Overruled.*

"If a defendant in a bill files no plea or answer but files a demurrer, simply on the ground that the plaintiff on the facts stated in the bill is entitled to no relief against him, and the court below overrules such demurrer and awards a rule against him to answer the bill at a specified time and he fails to do so, and a decree is rendered against him, and he makes no such motion to have it reversed or corrected in the court below, and he appeals from such decree, solely on the ground that the court rendered any sort of a decree against him, this Court will, though he did not make such motion, entertain his appeal, because such appeal though in form an appeal from the last decree is in substance and in reality an appeal from the decree overruling his demurrer and deciding, that the plaintiff was entitled to relief on the statements in the bill against him, and is therefore not to be regarded as a decree on a bill taken for confessed.   But if the appellant in such case does not confine his appeal to the error committed by the court in overruling his demurrer simply carried out in the last decree but insists, that there are in addition thereto other and independent errors in the last decree against him, which should be reversed, even though the Appellate Court held, that the demurrer was properly overruled, this Court will not entertain such appeal, because, so far as these additional and independent errors are concerned, this last decree is to be regarded as a decree on a bill taken for confessed and can not be reversed by this Court, till a motion to correct it has been made in the court below."  (*Watson* v. *Wigginton*, 28 W. Va. 533.)  (p. 150).

Appeal from Circuit Court, Pleasants County.

Action by Julia Israel Lamp and others against John T.

Locke and others.    From a decree awarding plaintiff a mandatory injunction and another decree refusing to reverse the first decree for alleged errors, certain defendants appeal.

*Affirmed.*

*William Beard,* for appellants.

*Frank J. Barron* and *G. D. Smith,* for appellees.

LIVELY, JUDGE :

From two decrees of the circuit court, one entered on the 14th of September, 1920, awarding to the plaintiff a mandatory injunction, and the other entered on the 2nd day of December, 1920, refusing to reverse the first named decree for alleged errors therein, some of the defendants prosecute this appeal.

The bill prays for a mandatory injunction against defendants compelling them to drill an off-set well on what is known as the W. P. Jones 68 acre farm to protect the gas thereunder from depletion through another well within five feet of the dividing line between the W. P. Jones farm and located on another tract of 64 acres known as the C. A. Jones lease.    The bill was filed August rules, 1920, and afterwards notice was served on defendants notifying them that on the 23rd day of August, 1920, plaintiffs would move for a mandatory injunction, compelling them to drill an off-set well on the W. P. Jones farm of 68 acres to protect drainage from a well they had drilled within a few feet of the boundary line, on the C. A. Jones lease.    A. S. McCullough, J. T. Locke, Dan H. Reynolds and Addie L. Reynolds appeared specially by William Beard, solicitor, to the notice and objected to the granting of the injunction because the bill was not sufficient in law to entitle the plaintiffs to the relief prayed for.    The court overruled the demurrer and gave defendants ten days to answer, who, by counsel in open court then declined to make further answer.    The motion was docketed and the hearing contiued until the 3rd day of September, following, on which day the defendants making no appearance and failing to answer, the court continued the hearing of the motion until its next term, to-wit, the 14th day of that month, because the bill was not then matured at rules for hearing.

On the 14th of September, 1920, the bill having regularly matured for hearing, and no further appearance being made by defendants, the cause was heard upon the bill, exhibits, decree nisi, and the motion for the mandatory injunction, the affidavits filed in support thereof, and upon the proceedings theretofore had, the bill was taken for confessed as to the defendants and the court entered the decree  complained of against the defendants, the owners,  lessees and those who were in possession of the W. P. Jones 68 acre leasehold and in possession and ownership of the C. A. Jones 62 acre leasehold, commanding them to sink an off-set well on the W. P. Jones lease to and through the oil and gas bearing sand found in that vicinity to sufficient depth to counteract and off-set a gas well upon the C. A. Jones 62 acre leasehold, then producing gas, with privilege of inspection, and measurement of the well, at its completion, to plaintiff; and required them, the plaintiffs, to execute an injunction bond.  Afterwards the defendants who had appeared and demurred to the bill  on August 23rd, and other defendants, namely, Frank H. Cox, S. V. Riggs, C. P. Simonton, Alva McCullough, R. E. Hays, Albert Neely, The Pleasants County Bank, and Benwood Oil Company, gave notice to plaintiffs that they would move the court on a certain day for reversal of the decree of September 14, and dissolution of the injunction awarded thereby, stating the grounds on which the motion would be made. This motion was heard and overruled, on December 2, 1920.

Plaintiffs are heirs-at-law of J. L. Israel, who died intestate in 1913, and they aver that J. L. Israel, on October 24, 1907, conveyed to A. N. Riggs a tract of 68 acres of land, known and designated as the W. P. Jones lease, for the sum of $1400.00, and in the granting clause thereof made the following provision; "reserving therefrom 1-16 royalty in all minerals produced from said farm for a period of 15 years from this date;" that on the same day said Riggs conveyed the same tract of land to W. P. Jones, in the granting clause of which he used these words, "reserving therefrom 1-16 royalty in all minerals produced from said farm for a period of 15 years from this date, second party to use due diligence to

have said land tested for oil, the aforesaid reservation of mineral rights is to cover reservation made by J. L. Israel and wife in deed made by them to A. N. Riggs of October 24, 1907''; that in 1915 Defendant W. P. Jones leased said tract of land for oil and gas purposes to the defendant J. T. Locke, who associated with himself other named defendants in a mining company known as the Jones Farm Oil Co., and he and his associates, in the year 1917, drilled on the W. P. Jones farm a small oil producing well and paid to plaintiffs about $100.00 as their 1-16 part of the royalty. The royalty provided for in the lease was ⅛ part of the oil and ⅛ of all gas produced and sold from the farm for each year so long as the gas is sold therefrom and payable quarterly when marketed. The bill avers that no further development has been made on the W. P. Jones lease; and further avers that defendant C. A. Jones, who is known as Cordelia Jones, the mother of defendant W. P. Jones, owns a tract of 62 acres adjoining the 68 acre W. P. Jones lease, and in the year 1915 also made and executed an oil and gas lease to defendant Locke on her 62 acre tract, who associated with himself certain other defendants, naming them, and also a number of the defendants associated with him in the Jones Farm Oil Co., as a Mining Company known as the Locke Gas Co., and proceeded to sink a well on the C. A. Jones 62 acre tract, within five feet of the dividing line between the W. P. Jones farm, and the C. A. Jones farm; which well is a good gas producer, averaging a daily production of about 1,000,000 feet, and through which, by means of its close proximity to the dividing line, the gas which underlies the W. P. Jones lease, in which plaintiffs are interested to the extent of 1-16 of such gas, is being rapidly drained and exhausted, to the great detriment and damage of plaintiffs' interest therein. The bill charges on information and belief that W. P. Jones and his mother, C. A. Jones, combined and conspired with Locke and the other defendants, who composed the Locke Gas Company, to drill the C. A. Jones well within five feet of the dividing line with the intent to draw the gas underlying the W. P. Jones 68 acre lease in order to do, as they have thereby done, irreparable injury and damage to the plaintiffs, and that the well was

so located at the behest and request of W. P. Jones in order that he and his mother would be the real beneficiaries in the royalty from said well and thus drain the W. P. Jones lease without paying plaintiffs the 1-16 royalty therein to which they were entitled.    The bill alleges refusal on the part of defendants, after request, to drill an off-set well on the W. P. Jones tract of 68 acres, to protect the depletion of the gas therefrom; that plaintiffs have no adequate relief save in a court of equity; that they are suffering irreparable loss; that large quantities of gas are being taken from them without payment of their royalty; and they pray for a mandatory injunction to compel defendants to drill an off-set well; and for general relief.

The deeds and leases are filed as exhibits with the bill. To support the application for mandatory injunction, two affidavits are filed by plaintiff, one sworn to by W. L. Israel, one of the plaintiffs, to the effect that the well complained of is producing a large amount of gas in paying quantities and was drilled in in February, 1918, and is located within five feet of the dividing line between the two farms; the other by D.-L. McCullough, who has no interest in the litigation, to the effect that he was present when the well complained of was located by W. P. Jones and certain of the other defendants and who stated that the well was to their knowledge very close to the W. P. Jones dividing line; that the well was drilled in in February, 1918, was gauged at over 1,000,000 feet and that he was afterwards informed by A. S. McCullough that the first check received by the company, The Locke Gas Co., from the Hope Natural Gas Co., from the first sale of gas was over $900.00.    The principal ground of error is predicated on the insufficiency of the bill and on this assignment the case turns.    For that reason the allegations of the bill have been set out at more length than usual.

Is the bill sufficient?    It is contended that plaintiffs do not have such an interest in the gas under the 68 acre W. P. Jones tract as will entitle them to an action for protection, and we are cited to *Feather* v. *Baird,* 85 W. Va. 267.  That decision holds that where a deed grants all the right, title and interest in and to minerals in a certain tract for a valuable

consideration, a covenant on the part of the grantee to pay one cent royalty per ton on all coal mined, payable as soon as the coal is mined and shipped, was not a condition subsequent, but only an additional consideration for the grant, which the vendee was bound to pay. The grantor conveyed all his title to the coal but retained an interest therein, enforcable when the coal was mined, which the grantee was obligated to pay. The Israel deed expressly "reserves from the grant 1-16 royalty in all minerals produced from said farm for a period of 15 years from this date," and conveys the land and minerals with this incumbrance on the minerals. The grantee does not bind himself to pay except by implication. If, perchance, he should extract the mineral he would be required to pay the reserved 1-16 royalty. Any one holding under him either by purchase or lease, and extracting the mineral would be likewise bound. But whether this clause should be construed as a retention of a part of the mineral in place, or whether in the nature of the usual covenant for payment of royalty in mining leases, or whether as an additional consideration for the grant, it is immaterial to inquire for the proper disposition of this case. It is plain that the vendor has a property right expressly reserved to him in the conveyance of which all subsequent purchasers or lessees are bound to take notice. Whether plaintiffs can protect this property right by mandatory injunction is the vital inquiry. On the same day this deed was made to Riggs (Oct. 24, 1907) the latter made conveyance of the same land (acknowledging before the same notary) to defendant W. P. Jones, expressly referring to the Israel deed therein, Jones assuming the payment to Israel of the purchase money, as the consideration for the grant, and in the granting clause used the following language; "reserving therefrom one sixteenth royalty in all mineral produced from the said farm for a period of fifteen years from this date, second party to use due diligence to have land tested for oil, the aforesaid reservation of mineral rights being made to cover the reservation made by J. L. Israel and Margaret Israel, his wife, in the deed made by them to A. N. Riggs bearing date Oct. 24, 1907, the said party of the first part hereby conveying to said

party of the second part all rights of every kind and character conveyed to the said A. N. Riggs by J. L. Israel and Margaret Israel, his wife, in the deed aforesaid.'' Defendant W. P. Jones and his lessees were fully aware of Israel's interest in the mineral, and assumed the obligation to pay his royalty reserved in case the minerals were removed by them. It is argued by counsel for appellants that Israel, in order to protect his reservation, should have expressly reserved a vendor's lien in the face of his deed as for a balance of purchase money. Unquestionably, no. Indicative of the knowledge of Israel's reservation and vested right, defendant Jones and his lessees with whom he formed a mining parntership to exploit the farm for oil and gas, in the year 1917, drilled a producing oil well on the farm, and, recognizing plaintiffs' interest in the oil produced, paid to them their 1-16 royalty, amounting to about $100.00 and continued to pay royalties to them. So states the bill, and it is not controverted. The construction placed upon the meaning of any instrument, or any part thereof by the parties thereto is entitled to great weight, and is often conclusive. *Lovett* v. *W. Va. Central Gas Co.*, 73 W. Va. 40, 79 S. E. 1007; 13 C. J. p. 546.

Courts are extremely cautious in considering applications for, and awarding, mandatory injunction, and a clear right must be shown, and the case be one of necessity or extreme hardship. *Powhatan C. & C. Co.* v. *Ritz*, 60 W. Va. 395. But the power to grant is undoubted, and, if it were not so, the remedial and restraining power of courts of equity would be greatly impaired, if not partially destroyed. Does the bill set up a case of necessity or extreme hardship? Plaintiffs' right to royalty in the W. P. Jones tract is rapidly nearing extinguishment by the expiration of the 15 year period; and by conspiracy, defendants have caused a cessation of development thereon for the purpose of destroying their (plaintiffs) right, and at the same time are appropriating a part of it through a well on adjoining property. Coupled with this fleeting right of plaintiffs, is the uncertainty of damages in an action at law. Under the circumstances an action at law would be inadequate, and the delay practically a denial of justice. From the peculiar characteristics of oil and gas in

place, their elusive and migratory nature, their tendency to find an escape in the direction of least resistance, how far they will travel under given pressure to find an escape, has been found entirely too problematical for any degree of certainty. In practical experience no one will approximate with reasonable certainty, and experts widely differ. Damages in such cases are largely speculative and uncertain. The true measure is most difficult to find. A remedy at law is not adequate, in the sense to deprive equity of jurisdiction, unless it is as certain, prompt and efficient to the ends of justice, as the remedy in equity. Besides, fraud and collusion are charged, always elements of equitable jurisdiction. It is clear that an injunction will not lie against the defendants composing the mining company owning the C. A. Jones lease from developing their property. Archer on Oil & Gas, p. 782. Neither would an action at law lie against those members solely interested in that lease.

As above stated, W. P. Jones and his lessees had notice of plaintiffs' royalty in the 68 acre tract. In the operation and development it is their duty to protect plaintiffs' interest, not to destroy it. The principle of law expressed in the Latin maxim applies. "Sit utero tuo et alienum non laedas", meaning, "So use your own property as not to injure or destroy the property of another." There was an implied covenant when they leased this property that they would, having full knowledge and notice, protect plaintiffs' rights reserved, and pay them 1-16 royalty on all mineral taken therefrom. These plaintiffs, under the facts, are entitled to the same protection of their royalty interest as their co-owner of the royalties, W. P. Jones. When the lessee of oil and gas lands begins exploration, there is an implied covenant that he will diligently proceed and if oil or gas is found he will protect the lines and develop the property. Archer on Oil and Gas p. 393. But Jones has conspired with his lessees to take the gas out by a well on an adjoining tract. He has procured this to be done for apparent reasons. The bill charges that he induced his lessees so to act. It is well settled that Jones could compel his lessees to build an off-set well to protect his royalty. Cannot plaintiffs, co-owners of the

royalties demand and receive the same protection, especially when their right will soon expire? A lessee in the operation of his lease must act in good faith. Where he owns adjoining land he has no right, under the guise of ownership to drain the land leased by putting down wells on the adjoining property, without sinking off-set wells on the lease sufficient to protect it from such drainage, when the lessor is entitled to royalties in the oil or gas taken from the leased premises. Thornton on Oil & Gas (3rd ed.) sec. 108. A lessee of two or more adjoining tracts cannot collusively, fraudulently or evasively drill wells on one tract so as to drain the oil from the adjoining tracts, and equity will furnish relief to those injured thereby. *Barnard* v. *Monongahela Gas Co.*, 216 Pa. 362; *Kleppner* v. *Lemon*, 176 Pa. 502. In this last case the defendant was required to sink an off-set well forthwith, under penalty of forfeiture. See also *Jennings* v. *Carbon Co.*, 73 W. Va. 217. A decree of forfeiture cannot be given plaintiffs. They are not parties to the lease; and a forfeiture or abandonment would, as a practical result, extinguish their right, already nearly lost by flight of time, and would perpetuate the very condition brought about by the collusion of defendants—depletion of the gas through adjacent wells. Under the allegations of the bill charging fraud and collusion, justice would not permit a forfeiture, or an abandonment of the W. P. Jones lease. Then what adequate remedy remains except through mandatory process of a court of equity? We think that the facts alleged, with the necessary inference therefrom, are sufficient to justify such remedy, unusual and harsh though it may be. The case is one of necessity and extreme hardship.

Appellants urge that the demurrer (termed an objection to the granting of the mandatory injunction) should have been sustained because there is no allegation in the bill that the oil well on the W. P. Jones tract was not a sufficient off-set to protect drainage from the well near the dividing line; that it is not averred therein with precision that there is sufficient territory in the W. P. Jones tract underlaid with sand from which the said well obtains its gas, and that the nature of the sand is such as to allow drainage; that it was error for the

court to read ex parte affidavits submitted to sutain the motion for injunction and that such affidavits when read did not supply adequate proof to sustain the decree of September 14, 1920. The only well on the W. P. Jones tract is alleged to be an oil well, how far away from the C. A. Jones lease does not appear, but the bill states facts which lead to the conclusion that the gas in large volume is being drawn from the W. P. Jones land without adequate protection to plaintiffs' interest. The prayer for an off-set well negatives the presumption that one is already there. It would be a violent and unreasonable presumption to say that a well of one million feet flow, within five feet of a tract of land, would not draw gas from that tract. The character of the sand under both tracts would be presumed to be the same. Without an actual test a statement to the contrary would be imaginative. Proofs of the allegations of the bill, duly sworn to, are not necessary upon demurrer, or when their verity is not denied. Affidavits are always proper to sustain a bill for preliminary injunction. The decree is alleged to be erroneous because it gives plaintiffs the privilege of going upon the premises to inspect the drilling of the off-set well and to measure its flow when finished. What harm there can be in such a privilege we fail to perceive. It does not vitiate the decree. If it be exercised to the detriment of defendants, the court would remedy that condition when it arises. It is a privilege which fair minded business dealing would readily accord.

Criticism is directed to the form of the bill. It is claimed that it is not in the form required by sec. 37, chap. 125 of the Code, or in the usual form of chancery practice prior to the enactment of that section, and is therefore fatally defective. A bill is not necessarily defective because it does not follow the form found in the Code. That section expressly says that the bill may be in that form or in the substance thereof. It is not mandatory. The bill, in what purports to be its caption, names each of the plaintiffs and each of the defendants. Then follows the words: ''To the Honorable Homer B. Woods, Judge of the Circuit Court of Pleasants County, West Virginia: The bill of complaint of Julia Israel Lamp et als., plaintiffs, against John T. Locke, et al.,

defendants, filed in your Honor's said Court at August Rules, 1920. The plaintiffs represent and show unto your Honor'', etc. In the prayer of the bill all of the defendants are again named as such. While the bill is inaptly drawn, as to the naming of parties, we think it sufficient to show who are the plaintiffs and defendants, their respective interests in the subject matter, and the relief sought. The criticism is technical.

Further error is asserted because, it is claimed, no proper time was given defendant in which to answer the bill after their appearance on August 23 to the notice for injunction, at which time they objected to the granting of the injunction. The claim is to the effect that the bill had not matured for hearing and the demurrer interposed to the bill and then overruled would not justify a rule to answer until after the bill had fully matured. The bill is for mandatory injunction only and defendants were summoned to answer it at August Rules, when the bill was filed. The action was pending and a motion for preliminary injunction could have been made at any time. It could have been made upon presentation of the bill before filing and before process. ''A preliminary injunction is an extraordinary proceeding in which the statute dispenses with some things indispensable in regular proceedings.'' *Cooper* v. *Bennett,* 70 W. Va. 112. The appearance of defendants to resist the motion for injunction was an appearance to the bill, and they were entitled to demur, and answer, if they deemed it advisable. They waived maturity of the bill. ''A defendant who appears and answers at a term when the cause is improperly on the docket because not set for hearing at rules, waives such irregularity.'' *McDermott* v. *Newmann,* 64 W. Va. 195. But counsel contends that they did not demur, but simply objected to the granting of the injunction on the preliminary motion thereof, and that the court improperly treated their objection as a demurrer. The record shows that defendants appeared, objected to the granting of the injunction, ''and they and each of them say that the plaintiffs' said bill is not sufficient in law to entitle plaintiffs to the relief by injunction prayed for in their said bill.'' This was clearly a demurrer. The court

properly treated it as such. In the subsequent proceedings, and in the petition for appeal, counsel for defendants treats it as a demurrer. Upon overruling the demurrer time was given defendants to answer, and counsel in open court declined to answer, and made no further appearance. The motion for injunction was docketed and the hearing thereon continued and no action was taken thereon until after the cause had fully matured. Where a demurrer is argued and overruled, and the demurrant is ruled to answer on a day certain, if on that day he fails to appear and answer, plaintiff is entitled to a decree against him for the relief prayed. Sec. 30, chap. 125, Code. Defendants could have answered at any time before final decree, under sec. 53 of chap. 125, notwithstanding the court's order giving them ten days to make answer. *Waggy v. Waggy,* 77 W. Va. 144. Appellees contend that no assignment of error except to the decree overruling the demurrer should be considered as to these defendants who appeared, demurred and then refused to answer, that they stand in this court upon their demurrer. If an appeal had been taken by them without first making motion under sec. 5, chap. 134, Code, to correct errors, then they could not be heard upon any assignment of error committed after the demurrer was overruled; they would stand upon the questions raised by the demurrer. *Steenrod's Admr.* v. *Railroad Co.,* 25 W. Va. 133; *Ferrell* v. *Camden,* 57 W. Va. 401. But they, as well as their co-defendants, have made the motion in the lower court to reverse and correct errors under said section of chap. 134, as to both decrees, and the errors, if any, committed in both decrees will be considered. The rule is stated by Judge GREEN as follows: "If a defendant in a bill files no plea or answer but files a demurrer, simply on the ground that the plaintiff on the facts stated in the bill is entitled to no relief against him, and the court below overrules such demurrer and awards a rule against him to answer the bill at a specified time, and he fails to do so, and a decree is rendered against him, and he makes no such motion to have it reversed or corrected in the court below, and he appeals from such decree, solely on the ground that the court rendered any sort of a decree against him, this Court

will, though he did not make such motion, entertain his appeal, because such appeal though in form an appeal from the last decree is in substance and in reality an appeal from the decree overruling his demurrer and deciding, that the plaintiff was entitled to relief on the statements in the bill against him, and is therefore not to be regarded as a decree on a bill taken for confessed.   But if the appellant in such case does not confine his appeal to the error committed by the court in overruling his demurrer simply carried out in the last decree but insists, that there are in addition thereto other and independent errors in the last decree against him, which should be reversed, even though the Appellate Court held, that the demurrer was properly overruled, this Court will not entertain such appeal, because, so far as these additional and independent errors are concerned, this last decree is to be regarded as a decree on a bill taken for confessed and can not be reversed by this Court, till a motion to correct it has been made in the court below.''   *Watson* v. *Wigginton*, 28 W. Va. 533.

A. N. Riggs has no interest in the litigation and is not a necessary party.   He was evidently only an intermediary between J. L. Israel and W. P. Jones in the transfer of the title to the W. P. Jones tract.

We affirm the decrees of September 14, 1920, and of December, 2, 1920.

*Affirmed.*