HOFFMAN TRIMBLE *et al. v.* HOPE NATURAL GAS COMPANY

(No. 7338)

Submitted March 7, 1933. Decided March 28, 1933.

(Rehearing denied June 9, 1933)

*Smith & Smith,* for appellants.

*Kemble White, A. F. McCue,* and *Harold M. Garrett,* for appellee.

WOODS, JUDGE:

This suit was brought against the Hope Natural Gas Company, assignee of an oil and gas lease, executed March 23, 1925, by plaintiffs to one Chidister, for the purpose of requiring said company to properly develop and to properly protect the 156 acre tract, covered by the lease, from unlawful drainage.

The lease was for a term of five years and as long thereafter as oil and gas or either of them should be produced by the lessee. The lessors were to be paid ⅛ of the money received for "sale of said gas, it being understood that the price at which the same is sold shall be 14c per 1,000 cubic feet." Lessee, beginning May 25, 1925, was required to pay $58.50 quarterly "as a carrying rent" for the three months following the date of said payment, until a well was completed. The lessee was given right to surrender the lease at any time, providing rents and royalties had been paid, and be released from fulfillment of the covenants.

The original bill was filed at March Rules 1928, and in 1930, after the proof had been taken, plaintiffs were permitted to file an amended and supplemental bill, which was drawn in conformity with the proof, as plaintiffs conceived it.

At the time of the filing of the original bill the Hope Natural Gas Company was the owner and operator of two wells which are alleged to be draining the gas from under plaintiffs' land—one the Morrison well, completed February, 1927, and the other the Nutter well, completed October of the same year. Some time in 1928, and after the filing of the original bill herein, the defendant company drilled a well on plaintiffs' property, which well, the amended and supplemental bill alleges, was not properly completed, and that if it had been properly completed, would produce many times its present output.

In regard to the issue of drainage, the original bill alleges that defendant is the owner of the lease of the Nutter 65 acres, which adjoins plaintiffs' land; that a well was com-

pleted thereon in October, 1927, which well produced gas at the rate of over one million cubic feet of gas a day; that said well had a rock pressure of 1500 pounds, to the square inch; that it still produces gas in paying quantities; that said well is 391 feet from plaintiffs' line; that a well was drilled in February, 1927, on the Morrison farm, which adjoins plaintiffs' 156 acres; that this well produced three hundred thousand feet a day, had a rock pressure of 1500 pounds, and is still producing gas in paying quantities, and is situate 400 feet from plaintiffs' farm; that the rock pressure of the wells in the Benson field is very high; that plaintiffs' 156 acres is in the center of this gas field; that Benson sand is very porous; that gas is very elusive in character, and by reason of the nature of the sand, is being drained through the adjoining wells; that it is in reality being depleted through the Morrison and Nutter wells; that, in addition to an implied covenant to develop fully, there is another covenant to protect the gas estate from drainage; that defendant has not protected plaintiffs' property; that the gas estate is being destroyed in volume and pressure depleted; that defendant is developing property in the Benson field to suit its own interests; that there is implied covenant to protect against drainage; that defendant has acted fraudulently in law and fact in failing to drill said land and to protect said premises from drainage through wells on adjoining, coterminous and neighboring lands in the production of oil and gas in which defendant had and has an interest as lessee, and by reason of such fraudulent conduct, the pressure of the gas within said land is thereby being constantly reduced and therefore gradually destroyed and the gas removed and depleted; that compensation for such injury is not accurately ascertainable; that refusal to drill, etc., is a fraud upon plaintiffs' interests, and deprives plaintiffs of royalties to which they are rightfully entitled; that the injury and damage is a continuing one; that no evidence can be produced as to the exact amount of drainage through such adjoining wells, other than that which is conjectural and speculative and that there is no way of ascertaining how long before the gas wells upon lands adjoining will destroy the value of plaintiffs' said gas estate by drainage by reduction of the rock pressure thereof, etc.

The circuit court gave effect to the provision which provided for the payment of rental in lieu of drilling and decided that inasmuch as the rental had been paid and accepted by the plaintiff for the period in which the suit was brought, the plaintiff had no right of action at the time such suit was instituted by him. This action on the part of the court, according to the opinion filed as a part of the dismissal decretal order, was based on the case of *Carper* v. *United Fuel Gas Company,* 78 W. Va. 433, 89 S. E. 12, 14. This court held in *United Fuel Gas Company* v. *Smith,* 93 W. Va. 646, 117 S. E. 900, that there is always implied in every oil and gas lease a covenant to drill the number of wells reasonably necessary to develop the property and prevent drainage by operations on adjoining lands. The plaintiffs set up in the bill the facts that they had refrained from leasing the land for a score of years for the purpose of finding some one who would immediately develop it by drilling. When it was leased to the defendant, a provision was inserted that the lessors were to have one-eighth of the gas at 14c per thousand cubic feet. By this provision they in fact became partners in the development of the lease. The provision in the lease in regard to the payment of the rental was merely for the delay in drilling. The Nutter well and the Morrison well within 400 feet and 391 feet, respectively, of plaintiffs' land had been drilled and were in possession of the defendant at the time of the suit. According to the allegations in the bill, the defendant gas company is draining plaintiffs' land of its gas by means of the Nutter and Morrison wells; and the plaintiffs, due to defendant's inaction, are losing their gas, and the right to one-eighth of the gas produced at 14c per thousand feet. The onus of this suit is for protection from this drainage by the defendant. We have held that equity has jurisdiction at the suit of the lessor against lessee on covenants broken to enforce a specific performance of the terms and provisions of a lease of land for oil and gas purposes. *Lockwood* v. *Carter Oil Co.,* 73 W. Va. 175, 80 S. E. 814. Payment of rental is not waiver of defendant's covenant to drill, either to develop the property, or to prevent fraudulent drainage. A material issue is whether there has been and is actual or even threatened willful or legally fraudulent drainage of the plaintiffs' 156 acre lease

owned by the defendant, through the Malissa Nutter lease well owned by defendant and the W. L. Morrison lease well owned by the defendant, and other wells on other operated leases in the Benson sand gas field, all owned by the defendant, thereby diminishing the plaintiffs' royalty measured by production.

At the time of the institution of this suit the plaintiffs allege that the defendant unquestionably was willfully taking gas from his lease through wells on its adjoining and neighboring leases, and refusing plaintiffs' demands and requests for line protection. Such conduct the law pronounces fraudulent on the part of the operator. The invocation of the plaintiffs on this ground, under the circumstances of the case, is an effort to carry it a step beyond the cases in which it has been previously applied by this Court. In none of them, could it be contended that the injury threatened or inflicted had been compensated by a money payment, or a covenant to accept money by way of compensation as is here. To say the lessor intended to permit the oil and gas in his land to be withdrawn from it otherwise than through wells drilled on it under the lease and thus to let it go to other persons, for nothing, as an incident of the procurement of a small rental value for the term of five years, would be inconsistent with reason, and contrary to the legal principles governing the relation of landlord and tenant. He expects it to remain in the land until the rental period ends, whether it ceases by the drilling of a well or the expiration of the term. Neither could have intended at the time of the execution of the lease that the lessee should take out the mineral through wells on other lands. The rental is for delay, not destruction. *Carper* v. *United Fuel Gas Company, supra.* Since the lessee pays rent only for delay, the reading in of an implied provision for drilling to prevent drainage is not inhibited by the rules of construction, for all of the words of the lease are given effect. They are merely limited in their operation to the purposes for which they were inserted. Neither forfeiture nor abandonment nor cancellation is an adequate remedy under the bill filed by the plaintiff. *Lamp* v. *Locke*, 89 W. Va. 138, 108 S. E. 889. The nearest to an adequate remedy here is specific performance under the alternative prayer, or mandatory in-

junction under the same prayer, as practically the same thing, or under the prayer for general relief which would accord with general equity practice on final hearing. This Court has plainly set out what constitutes fraud in oil and gas drainage cases in a number of decisions. *Hall* v. *South Penn Oil Co.*, 71 W. Va. 83, 76 S. E. 124; *Jennings* v. *Southern Carbon Co.*, 73 W. Va. 215, 80 S. E. 368; *Lamp* v. *Locke, supra*; and the Pennsylvania case of *Kleppner* v. *Lemon*, 176 Pa. 502, 35 Atl. 109. In the *Kleppner* case the court says: "But that the oil may be obtained in time through other wells, on the lands of other owners, is not enough to excuse the lessee from his implied undertaking to operate the land for the best interests of both owner and operator." And again, "It is not found as a fact that these wells do now reach the plaintiff's so as to draw from it. It is the fact that they may do so that gives the plaintiff his claim to present consideration." In the *Lamp* case this Court said: "Courts are extremely cautious in considering applications for, and awarding, mandatory injunction, and a clear right must be shown, and the case be one of necessity or extreme hardship. * * * But the power to grant is undoubted, and, if it were not so, the remedial and restraining power of courts of equity would be greatly impaired, if not partially destroyed."

A lessee of two or more adjoining tracts cannot fraudulently or evasively drill wells on one tract so as to drain the oil from the adjoining tracts and equity will furnish relief to those injured thereby. *Barnard* v. *Monongahela Natural Gas Company*, 216 Pa. 362, 65 A. 801.

The *Carper* case did not contain the element of fraudulent drainage. The Court said: "They [lessors] still have their gas and have been compensated for the delay." There was no fraudulent drainage. The proof was to the effect that the defendant was not extracting the oil and gas in plaintiff's lease through any other lease owned by the defendant. According to the bill filed in the present suit, however, the plaintiffs specifically aver that their gas estate is being materially depleted by the defendant through other wells in proximity thereto and owned by the defendant.

Were there no elements of fraudulent drainage by the defendant of the gas under the plaintiffs' land, the payment of

the rental would have destroyed the plaintiffs' right of suit. But according to the bill such is not the case. The plaintiffs not only allege facts which present a basis for equitable relief but introduce evidence tending to sustain such charges. The chancellor did not pass upon the merits of the case. As we have shown, he should have done so.

In view of the foregoing we must reverse the decree, reinstate the bill, and remand the cause for further proceeding in conformity with the principles set forth in this opinion.

*Reversed and remanded.*

MAXWELL, PRESIDENT, On petition for rehearing:

In support of the petition for rehearing, briefs have been filed not only by the able counsel of record for the defendant but also by other able lawyers who represent companies engaged in oil and gas development.

Counsel seem to apprehend that by this decision, we are overthrowing settled rules of property of this jurisdiction; that we are in effect overruling the cases of *Wilson* v. *Gas Co.*, 78 W. Va. 329, 88 S. E. 1075; *Carper* v. *Gas Co.*, 78 W. Va. 433, 89 S. E. 12, and *Stanley* v. *Gas Co.*, 78 W. Va. 793, 90 S. E. 344; that we are making it possible for a lessor, after having accepted delay rental for a definite period, to sue the lessee within that period for cancellation of the lease or for damages for failure to drill. With the greatest deference to distinguished counsel, we are unable to perceive that we are changing any rule of property, that we are overruling in any particular either of the said cases, or that by the rule employed in the instant case lessees are to be subjected to the hazard of vexatious litigation within periods covered by delay rental paid by them. In neither the *Wilson,* the *Carper* nor the *Stanley* cases was fraudulent drainage by the lessee itself considered.

There must be kept in mind the several procedures affecting oil and gas leases. On the one hand we have actions for damages for failure to develop or for failure to off-set drainage, and suits in equity to cancel leases because of some violation

846

of covenants by the lessee. We are not dealing with situations of that kind in the instant case. On the other hand, there may be a suit by a lessor specifically to enforce on the part of the lessee the covenants, express or implied, of the contract between them. And where, as at bar, the suit is based on allegations of fraudulent drainage by the lessee, the acceptance of delay rental by the lessor does not preclude him from coming into equity even within the period for which the delay rental has been paid. Delay rental may not be employed as a cloak for fraud. Fraud vitiates everything. So, we hold simply that, such situation appearing from the pleadings at bar, the trial chancellor should decide the case on its merits.