E. C. DILLARD *et al. v.* UNITED FUEL GAS COMPANY *et al.*

(No. 7676)

Submitted January 23, 1934.   Decided March 6, 1934.

*H. A. Ritz* and *B. J. Pettigrew,* for appellant.
*Grover F. Hedges* and *Thos. P. Ryan,* for appellees.

MAXWELL, JUDGE:

This is a chancery suit by the owners in fee of the oil and gas underlying the John W. Epling tract of 173 acres of

land in Roane County, to compel the lessee, United Fuel Gas Company, to drill additional wells for oil and gas on said land. The lessee appeals from a decree of the trial chancellor requiring it to drill two additional wells or to pay $300.00 per annum for each of such wells in lieu of drilling, upon penalty of cancellation of the lease excepting twenty-five acres surrounding each of two wells (one oil well and one gas well) theretofore drilled on said land.

Only two wells have been drilled on the Epling land. One of these is a Salt Sand oil well on the eastern side of the farm within a few feet of the school house lot hereinafter mentioned. The other is a "Big Injun" gas well 368 feet (lessee's map) from the western boundary of the tract. The Big Lime lies above the "Big Injun". There is no intervening stratum. The top of the "Big Injun" is at a depth of about 1840 feet. The oil well is now owned and operated by the South Penn Oil Company. This situation was effectuated under an agreement between the oil company and the United Fuel Gas Company and its assignor, the Hope Natural Gas Company, by which it was provided that any oil well or wells drilled on the property should be turned over to the oil company at its election.

The immediate section of country is denominated as clearly defined gas territory. The land in question is surrounded by ten gas-producing wells, nine of which are owned and operated by the United Fuel Gas Company. The remaining one is owned and operated by the Morley Oil & Gas Company.

The Morley well is on the school house lot and is only ten feet from the Epling boundary line. One of the other nine wells, known and designated as T. R. Simmons well No. 1415, is located just north of the school house lot and 132 feet west of the western boundary of the Epling tract. The Epling oil well is near these two gas wells, and, according to the testimony, it is a very indifferent one. A defense witness says he thinks it should be abandoned. The drilling of this well stopped in the Big Lime. The underlying gas-producing "Big Injun" was not penetrated. The Morley well, the Simmons well, the gas well on the 173-acre Epling tract, and all of the other gas wells mentioned are in the "Big Injun".

Plaintiffs' requests of the lessee prior to the institution of

this suit for additional development on the Epling tract were refused.

The surrounding gas wells, other than the Morley and Simmons wells, are distant from the Epling tract, according to survey of plaintiffs' engineers, from 357½ to 2220 feet. Of this group the second nearest one is 825 feet. In the absence of testimony definitely tending to establish the fact that these wells drain gas from under the Epling land, it cannot be assumed that they do. Plaintiffs introduced the testimony of numerous witnesses with variable experience as producers of natural gas and as operators in the gas fields, some of whom have been engaged for many years as oil and gas well drillers. These witnesses express the opinion that drainage from under the Epling land is taking place through these outside wells. They are of opinion that there should be additional wells on the Epling tract to protect it from such drainage, the number of additional wells being variously estimated at from two to five. While courts, of course, entertain very high regard for the testimony of such experienced and competent men, yet there must be definite basis to support opinion evidence in a matter of this sort before there can be justification for rendering a decree of far-reaching consequences against a lessee of oil and gas property. The testimony adduced by the plaintiffs does not disclose whether the "Big Injun" stratum underlying and in the vicinity of the Epling tract is characterized by porosity or compactness of structure, the latter being indicative of limited drainage, the former more extended. Nor does the evidence disclose the rock pressure of these gas wells, or their history. While these facts are probably not in the possession of the plaintiffs, the same are available to them. With such facts established as definitely as might be, together with volume of production, there would be satisfactory basis upon which men experienced in the production of natural gas could express very valuable opinions as to whether any of these surrounding gas wells, except the Morley and Simmons wells, are draining gas from under the Epling tract. As the matter stands it is of necessity largely conjectural. The case of *Jennings* v. *Carbon Co.*, 81 W. Va. 347, 94 S. E. 363, is illustrative of the requirements that devolve upon a plaintiff in such situation.

Other than the Morley and Simmons wells, the nearest of the surrounding gas wells is the Boggs well, No. 1376, which is 357½ feet east of the easterly boundary line of the Epling farm, according to plaintiffs' map, and 374 feet according to the lessee's map. In addition to the uncertainty which attends under the evidence as to whether this well is draining gas from the Epling land, it is to be noted that the above mentioned gas well which is located on the Epling land is not more than about 1360 feet from the Boggs well. The said Epling well is situated in a southwesterly direction from the Boggs well and is 368 feet from the Boggs line. In this situation, the one is in no small degree an offset for the other.

As to the Morley and Simmons wells, the former about ten and the latter about 132 feet from the Epling line, it seems obvious that the plaintiffs' witnesses were warranted in their opinions that drainage of gas is by this means being made from under the Epling land. Their proximity obviates the necessity for more definite particularization, such as is necessary with reference to the wells more remotely located. It is to be remembered, too, that there is no gas well offset on the Epling land to these wells. The nearby Epling well is an oil well in the Big Lime and does not penetrate the gas producing "Big Injun". In the light of this situation, we are of opinion that the trial chancellor was well warranted in requiring that one additional well be drilled, but we do not think that the evidence sustains his position in requiring that there be two additional wells drilled on the tract.

The jurisdiction of equity to afford relief in this matter is challenged. It is urged that if the plaintiffs have any rights to be redressed, their remedy is at law for damages; that there was no duty on the gas company to further develop merely for the benefit of the plaintiffs; that it is incumbent upon the plaintiffs to show by a preponderance of the evidence that additional drilling would probably result profitably to the lessee. The lessee relies upon holdings typified by the cases of *Todd* v. *Light & Heat Co.*, 90 W. Va. 40, 110 S. E. 446, 448; *Steel* v. *Development Co.*, 80 W. Va. 206, 92 S. E. 410; *Grass* v. *Development Co.*, 75 W. Va. 719, 84 S. E. 750; *McGraw Oil Co.* v. *Kennedy*, 65 W. Va. 595, 64 S. E. 1027; *Hall* v. *South Penn Oil Co.*, 71 W. Va. 82, 76 S. E. 124. These

cases are authority for these propositions: "An oil and gas lease cannot be cancelled in equity only for failure to drill additional wells." *McGraw Oil Company* v. *Kennedy*. The lessee is under no duty to operate at a loss to himself to make the premises profitable to the lessor; and, failure or refusal to drill additional wells renders the lessee liable for damages but does not afford ground for cancellation. *Hall* v. *South Penn Oil Co.* Ordinarily the remedy for breach of the implied covenant to fully develop an oil or gas lease is an action at law for damages, "and there is no right in equity to have partial cancellation of the lease." *Todd* v. *Light & Heat Co.* "The owner of a lease for the production of oil and gas, containing the usual terms and conditions, must, if either mineral is found in paying quantities on the lands, exercise due and reasonable diligence in prosecuting operations thereunder for the mutual benefit of himself and his lessor; and if he unreasonably fails or refuses so to do, damages therefor are recoverable against him in an appropriate action at law." *Grass* v. *Development Co.*

But the principles laid down in this line of cases are not controlling of a situation such as is presented at bar. The suit is based on the alleged fraudulent conduct of the lessee in draining gas from the Epling tract through wells owned and operated by it on adjoining leases. While we have eliminated from consideration all of such wells except the Simmons well, due regard must be given to it. What is fraud in such circumstances? Ordinarily it is considered to be fraud for a lessee of a given property, without protecting its boundaries by adequate offset wells, to take oil or gas from wells controlled by him on adjoining properties, which wells are so close to the boundaries of the given property as evidently to drain oil or gas from thereunder. "A lessee in the operation of his lease must act in good faith. Where he owns adjoining land he has no right, under the guise of ownership to drain the land leased by putting down wells on the adjoining property, without sinking offset wells on the lease sufficient to protect it from such drainage, when the lessor is entitled to royalties in the oil or gas taken from the leased premises." *Lamp* v. *Locke*, 89 W. Va. 138, 147, 108 S. E. 889, 893. Though there may not be an actual dishonest intent on the part of the operator, the

result is the same. And, even if such situation arise through the exercise of *bona fide* business judgment on the part of the lessee, if oil or gas from under the given tract is extracted through wells of the same lessee on adjoining tracts, equity considers it fraudulent conduct. This, like most equitable principles, is not absolute, but it applies generally. And, in such situation, the fact that the lessee cannot drill an additional well or wells on the given tract profitably to himself, as is contended by the lessee herein, is not controlling. The lessee's equity in such particular must yield to the superior equity of the owner of the oil and gas which is being improperly extracted. "Under such circumstances, the lessee will not be heard to contend that the drilling necessary to protect the plaintiff's property must show a profit to it as well as the lessor." *Adkins* v. *Huntington Devel. & Gas Co.*, 113 W. Va. 490, 168 S. E. 366, 369.

Where there is fraudulent drainage, equity has jurisdiction. Fraud is the gravamen of plaintiffs' bill herein. "The owner of a lease for the production of oil and gas, containing the usual terms and conditions, must, if either mineral is found in paying quantities on or near the lands leased, exercise due and reasonable diligence in prosecuting operations thereunder, for the mutual benefit of himself and the landowner; and, if he fraudulently fails or refuses to conduct such further operations, equity will, at the suit of the lessor, decree either total or partial cancellation of the lease, according to the facts and circumstances averred and proved." *Jennings* v. *Southern Carbon Co.*, 73 W. Va. 215, 80 S. E. 368, point 1, syllabus. In the more recent case of *Adkins* v. *Huntington Devel. & Gas Co., supra,* following the principle of the *Jennings* case, we held: "Where, in a suit in equity by a lessor, the allegations and proof show with reasonable certainty a fraudulent drainage of gas in substantial quantities from the leased premises, through a well operated by and on adjacent property belonging to the lessee, the latter may be compelled to sink an offset well on said leased premises, or submit to a forfeiture of all, except an acreage around the well theretofore drilled under the lease."

Such is the principle applied in Pennsylvania. Thus we find it stated: "Where the same lessee holds under two ad-

joining lessors, he may not fraudulently or evasively so drill his wells as to drain the property of one to the detriment of the other." *Barnard* v. *Monongahela Natural Gas Co.,* 216 Pa. 362, 65 A. 801, citing the leading case *Kleppner* v. *Lemon,* 176 Pa. 502, 35 A. 109, and other Pennsylvania cases.

The lease contains this provision: "It is agreed that said Lessee may drill or not drill on said land, as it may elect, and that the consideration and rentals paid and to be paid constitute adequate compensation for such privilege." Relying thereon the lessee insists that the plaintiff had no right to institute this suit because "the lease, by its express terms, vested in the lessee the sole right and privilege of electing to drill or not drill as it saw fit, the compensation therein provided being deemed by all parties thereto adequate for such privilege." The cases of *Wilson* v. *Gas Co.,* 78 W. Va. 329, 88 S. E. 1075; *Carper* v. *Gas Co.,* 78 W. Va. 433, 89 S. E. 12; and *Stanley* v. *Gas Co.,* 78 W. Va. 793, 90 S. E. 344, are relied on to support this proposition. Ordinarily, as appears from those cases, a suit affecting rights arising under an oil and gas lease may not be instituted within a period for which rental had been paid and accepted, but, as pointed out in *Trimble* v. *Hope Natural Gas Co.,* 113 W. Va. 839, 169 S. E. 529, this principle does not apply where fraudulent conduct on the part of the lessee enters into the situation. The case is not changed as to this basic principle by the fact that because of the drilling of the oil and gas wells (one each) on the Epling land delay rentals were no longer being paid. Oil and gas royalties took their place, but the requirements of good faith remained.

We modify the chancellor's decree so as to require the drilling of one well instead of two. We affirm the decree as modified.

*Modified and affirmed.*