**PLAINS PETROLEUM CORP. v. FINE et al.**

No. 25656. Sept. 17, 1935.

Rehearing Denied Nov. 19, 1935.

Thomas F. Shea and Harlan S. Trower, for plaintiff in error.

Gomer Smith, for defendants in error.

RILEY, J. Mildred Fine, subsequently joined by Leverett Edwards and T. Murray Robinson, brought this action for damages against Plains Petroleum Corporation, a corporation, B. G. Patton, John Luttes, E. P. Humphrey, R. G. Alexander, and Giles A. Kelly, individuals.

She alleged that she owned an undivided two-sixths interest in the oil, gas, and other minerals under lots 15 and 16, block 7, Reno avenue addition to Oklahoma City. Prior to the acquisition of plaintiff's interest these lots had been leased apart from other land for oil and gas development purposes to R. G. Alexander. Similarly Dan Traywick and wife, owners of adjoining lots, leased lots 13 and 14 of the same block and addition to R. G. Alexander. None of the lots were within the corporate limits of Oklahoma City, nor were any of them subject to zoning ordinances or existing statutes by which the separate tracts of land without consent of the owners could be unitized or "communitized" for drilling.

The plaintiffs never acquired any interest in lots 13 and 14.

Alexander, owner of the two separate leases, negotiated with John Luttes for their sale. The price agreed upon was $4,000. Luttes agreed to sell the leases to F. R. Henson for $4,500, plus 1/32 overriding royalty interest in lots 13 and 14. Henson arranged a sale to B. G. Patton. The Plains Petroleum Corporation not then being organized, Patton bought the leases, and an assignment as to lots 13 and 14 was made to him. The assignment covering lots 15 and 16 was

made to Giles Kelly. Thereafter Plains Petroleum Corporation was organized and it acquired both leases, but record title to the lease on lots 15 and 16 was permitted to remain in the name of Giles Kelly.

In the meantime Edwards and Robinson acquired, through LaRue McQuire, from the owners of the fee (Simon Stone and Belle Stone) a mineral deed to one-half interest in lots 15 and 16. The plaintiff, Mildred Fine, acquired her two-sixths interest from Edwards and Robinson, and a one-sixth interest in the mineral remained in the name of LaRue McQuire.

In the meantime F. R. Henson purchased the fee title to lots 15 and 16.

The result was, as to the ownership of minerals in lots 15 and 16, plaintiffs owned two-sixths, McGuire one-sixth, Henson three-sixteenths, and a lease stood in the name of Giles Kelly, who held record title for the benefit of Plains Petroleum Corporation.

It is further alleged that Patton acquired a surface lease from Henson covering lots 15 and 16, and a one-half interest in the royalty thereto.

Plains Petroleum Corporation completed a well on lots 13 and 14, December 11, 1930, and on that date Giles Kelly, at the request of Plains Petroleum Corporation, released of record the oil and gas lease to lots 15 and 16.

This action for damages is predicated upon the allegation that plaintiffs' interest in lots 15 and 16 has been injured by the drilling of said well "without any manner of protecting the owners of the royalty on lots 15 and 16 from drainage, and without in any manner attempting to deal equitably or fairly as to lessors on lots 15 and 16."

It is pleaded that after the said release was filed plaintiffs have been unable to secure any person or firm to drill a well on their land, and that it is impractical and unprofitable to drill an oil and gas well upon a tract of land the size of lots 15 and 16, and that there are no other lands which might be used together with lots 15 and 16 for drilling purposes; that as a consequence the royalty of plaintiffs is now valueless and has never been of any value since the completion of the well on lots 13 and 14.

There were allegations of a conspiracy and resultant damage to plaintiffs, but the verdict of the jury in the sum of $10,000 against Plains Petroleum Corporation, alone and without cross-appeal, negatived these allegations. Moreover, on page 29 of the answer brief it is said, "We concede that conspiracy was

not found; however, conspiracy was not an essential element of the cause of action against plaintiff in error." Again it is said: "Speaking in a strict sense, we are inclined to agree with the Plains Petroleum Corporation did not violate any legal duty toward defendants in error. We believe that they violated the principles of equity in holding the lease for the purpose for which they held it while drilling the adjoining lease." The trial court treated the cause as one in equity, but adopted the verdict of the jury and rendered judgment accordingly. Plains Petroleum Corporation appeals.

This undoubtedly constituted harmless error.

The decision in the cited case of Ward v. Mid-West & Gulf Co., 97 Okla. 252, 223 P. 170, did not sustain the award of a money judgment by a court of equity.

The cited decision in Mid-Continent Life Ins. Co. v. Sharrock, 162 Okla. 127, 20 P. (2d) 154, concerned a primary cause of reinstatement or establishment of a life insurance policy, and as an incident thereto a money judgment, whereas in the case at bar the sole object of the suit is a money judgment. There was no purpose or object for which a court of equity could obtain jurisdiction subsequently to retain jurisdiction for the purpose of administering complete relief. McKay v. Kelly, 130 Okla. 62, 264 P. 814.

This was an action at law and one sounding in tort. 21 C. J. 59; Trimble v. Minnesota Thresher Mfg. Co., 10 Okla. 578, 64 P. 8; Whitham v. Lehmer, 22 Okla. 627, 98 P. 351.

The defendants in error seek to support the judgment rendered under the statement that:

"Where the same lessee holds under two adjoining lessors he may not fraudulently or evasively so drill his wells as to drain the property of one to the detriment of the other." Barnard v. Monongahela Nat. Gas. Co., 216 Pa. 362, 65 Atl. 801; Culbertson v. Iola Port. Cement Co., 87 Kan. 529, 125 P. 81; J. M. Guffey Pet. Co. v. Jeff Chaison Townsite Co. (Tex. Civ. App.) 107 S. W. 609; Powers v. Bridgeport Oil Co., 238 Ill. 397, 87 N. E. 381; Lamp v. Locke, 89 W. Va. 138, 108 S. E. 889; Blair v. Clear Creek Oil & Gas Co., 148 Ark. 301, 230 S. W. 286; Dillard v. United Fuel & Gas Co. (W. Va.) 173 S. E. 573.

The premise is based upon the doctrine stated in Thornton, Oil & Gas (5th Ed.) sec. 298:

"A lessee cannot hold the leased premises and drain them by sinking wells on adjoining premises; and if he persist in such conduct he will forfeit his lease. In an instance of this character, or at least where there was danger that the leased premises would be drained of its oil by wells operated on adjoining premises by the lessee, it was held to be the duty of the lessee to open as many wells on the leased premises as was necessary to secure the common advantage of the lessor and himself. * * *"

It is notable that in the case at bar there was no attempt to hold the lease on lots 15 and 16 after completion of a well on lots 13 and 14.

Defendants in error say in their brief:

"* * * Under ordinary circumstances * * * the remedy of a landowner whose land is being drained is to secure a well to be drilled on his own land." (P. 4)

And:

"Under the particular circumstances existing in this lawsuit it is not surprising that no cases can be cited where a similar set of circumstances were before the court." (P. 13.)

And:

"Defendants in error now desire to concede that in the opinions above cited the court had in mind drainage by the lessee from adjoining premises. The language of most of these opinions do (sic) however, read that the lessee cannot collusively drill wells on the adjoining premises so as to drain the leased premises."

In other words, defendants in error rely upon these cases holding that one lessee cannot hold two leases while draining one with wells upon the other without protecting the lessor against drainage.

The judgment below rendered extends this equitable doctrine to prohibit drilling upon one of two tracts without at the same time drilling upon or protecting the other, and under circumstances which showed no drainage resulted during the drilling and no attempt was made to hold the lease upon plaintiffs' tract of land when production was reached on the other.

We cannot be convinced that the doctrine should be so extended. There are known and extreme hazards in the business of producing oil. Can it be said that a lessee, under separate instruments, of adjoining land must protect the lessor of land adjoining that upon which a well is being drilled prior to production? We think not. If such conduct constitutes an actionable tort, a far greater damage would follow a dry hole. The oil industry has been builded upon the theory, and lease contracts have too often to require citation of cases been construed as contemplating two distinct phases of action by lessee—one of exploration or payment in lieu of exploration, and the other of production. Moreover, the only protection that could adequately safeguard such an adjacent royalty owner's property is the simultaneous drilling of a well upon his property. A simultaneous drilling of a well upon lots 15 and 16 was not contemplated by these plaintiffs when they acquired their royalty interest. Plaintiffs' royalty interest to lots 15 and 16 was acquired with the knowledge of an existing and outstanding ordinary commercial form of "unless" oil and gas lease upon the tract of land. This instrument contained the provision: "Lessee may at any time surrender this lease by delivery or mailing a release thereof to the lessor, or by placing a release thereof on record in the proper county." The implied covenant to produce oil or gas therein contained may have warranted cancellation of the lease for failure to drill when production was reached on lots 13 and 14 and drainage would begin. This was recognized by the act of Plains Petroleum Corporation whereby it released, and filed for record its release at 10:10 a. m., December 11, 1930 (C.-M. 608).

It is significant that no demand was shown to have been made, at any time, in the case at bar, for the drilling of protective wells on lots 15 and 16. Wapa Oil & Development Co. v. McBride, 84 Okla. 184, 201 P. 984; Papoose Oil Co. v. Rainey et al., 89 Okla. 110, 213 P. 882; Farmers Mutual Oil Leasing Co. et al. v. Bonneau, 110 Okla. 168, 237 P. 83.

In the case of Blair v. Clear Creek Oil & Gas Co. (Ark.) 230 S. W. 286. relied upon, the rule for relief is based upon a duty arising while holding a lease after production is reached upon an adjoining tract of land. It is said:

"Should the lessee fail to drill a protection well after a producing well has been brought in near the lessors' boundary lines on adjacent lands, such well might draw off a material portion of the gas under the lessor's land before they could declare a forfeiture and procure someone else to drill an offset well."

But in the case at bar it seems to us that defendants in error having acquired their title to the royalty interest subject to an existing lease, they were bound by the knowledge of plaintiff in error's right, stipulated in the lease contract, to retain the lease without development until, at least, necessity for protection from drainage arose. Had the

well on lots 13 and 14 been a failure, there could have been no necessity for development upon lots 15 and 16. So far as the record shows, when to the contrary a duty devolved upon the lessee, it exercised its contractual privilege by relinquishment. The mere fact that no other person can be found to develop lots 15 and 16 for oil, gas, or other minerals on account of the limited area contained, or that it is not expedient for defendants in error to develop their property, does not render the Plains Petroleum Corporation liable for damages. The plaintiff in error was not responsible for the size of the tract of land. Prairie Oil & G. Co. v. Allen, 2 Fed. (2d) 566.

In the case of Dillard v. United Fuel Gas Co. (W. Va.) 173 S. E. 573, where a lessee held adjoining leases, and though it had drilled two wells upon plaintiff's land, it had failed to protect against drainage from a gas well on the adjacent tract, the court of equity required an additional well to be drilled or payment of $300 per annum in lieu of drilling for the gas drainage on pain and condition of a limited forfeiture of the lease for failure to meet such requirement and judgment.

In the case at bar there is no "holding", but the forfeiture is in effect complete and recognized.

The mere fact that plaintiff in error made use of the surface of the lots under which defendants in error held a royalty interest does not require a different conclusion. This use occurred under a "surface lease" procured from the owner of the fee. (C.-M. 305.) There was no interference with the rights of the defendants in error, and by the very fact that they held royalty interests only they recognized the right of others to carve out of the entire estate varied interests and to make use of them on receiving therefor rents and profits, which of course contemplates such use as was made of the surface of lots 15 and 16 by plaintiff in error.

In York v. Trigg, 87 Okla. 214, 209 P. 417, we held:

"No court is ever justified in invoking the maxim of equity for the purpose of destroying legal rights or of establishing rights that do not exist."

Such is the situation before us.

Judgment reversed and cause remanded, with directions to dismiss the petition.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.